2004-NMCA-035

86 P.3d 635

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**George "Judd" MOORE, Defendant–Appellant.**

**No. 23,259.**

Court of Appeals of New Mexico.

Jan. 30, 2004.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Steven S. Suttle, Assistant Attorney General, Albuquerque, NM, for Appellee.

Gary C. Mitchell, Gary C. Mitchell, P.C., Ruidoso, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Defendant George "Judd" Moore appeals the trial court's refusal to set aside his guilty plea. Among other contentions, Defendant asserts that the court's failure to advise him, at the time of his plea, of sex offender registration consequences under New Mexico's Sex Offender Registration and Notification Act (SORNA), NMSA 1978, §§ 29–11A–1 to –8 (1995, as amended through 2000), violated due process of law. We affirm.

## BACKGROUND

{2} Defendant's wife babysat two boys, under the age of thirteen, at the request of the boys' mother. During these visits, Defendant wrestled with the boys, but the play eventually "went further than just wrestling." In April 2000, Defendant was charged with seven counts of criminal sexual contact of a minor in the third degree, occurring between January 1, 2000, and March 21, 2000, in violation of NMSA 1978, § 30–9–13(A) (2001). On July 3, 2001, Defendant pled guilty to three counts of criminal sexual contact of a minor in the third degree and to one reduced count of attempted criminal sexual contact of a minor. At the plea hearing, Defendant admitted that he had "intentionally ... touched [one of the boys] on his buttocks ..., that at one point he ... touched [the child's] penis ... in a[n] ... intentional way, and that another time, he caused [the child] to touch his own ... groin area."

### The Plea Proceeding

{3} At the plea hearing, which was held two days before Defendant's July 5, 2001, scheduled trial date, the trial court discussed with Defendant the charges, the possible penalties, and Defendant's constitutional rights and his waiver of those rights. The written, signed plea agreement was presented to the court. The court asked Defendant if he had the opportunity to read the agreement and to discuss it with his attorney. Defendant replied that he had. The court asked Defendant if he understood the agreement and Defendant answered that he did. The court then determined that Defendant understood the charges and the maximum penalties. Defendant specifically and expressly waived his constitutional rights. The court inquired into the voluntariness of Defendant's plea and confirmed that Defendant had signed the plea agreement. The Chief Deputy District Attorney recited the factual basis for the plea and Defendant admitted that the facts stated were correct.

{4} The court accepted Defendant's plea, the remaining charges to which Defendant did not plea were dismissed, and the State agreed not to pursue habitual offender sentencing based on a prior embezzlement conviction. In anticipation of sentencing, the court ordered a pre-sentence report and also expected to receive a psychiatric evaluation that Defendant's attorney was attempting to obtain for Defendant. At no time during the plea hearing did the court mention SORNA or any sex offender registration requirement. Nor, at any time, did Defendant indicate that he was reluctant to plead, that he was hurried or unprepared for the plea, that he was entering the plea because he was not prepared for his imminent trial, or that he felt he was innocent or believed that he had a meritorious defense.

### The Motion to Set Aside Plea

{5} Nearly five months after his plea, Defendant filed a motion to set aside his plea. In his motion, Defendant contended that he was innocent and that he had numerous witnesses he could call regarding the incidents and his character. He also contended that he was assured he would receive probation and that he would be able to be with his family, from whom he had been separated, and that his family was the most important thing in his life. In addition, Defendant con-

tended that he was not advised · he would have to report as a criminal sex offender, and that reporting would impact his ability to obtain security clearances and continue with the work he was performing before the plea. Lastly, Defendant made allegations about conflicts of interest of the Las Cruces Police Department and the District Attorney's office. No affidavit accompanied the motion.

### The Hearing on Defendant's Motion to Set Aside His Plea

{6} The court conducted an evidentiary hearing on Defendant's motion to set aside his plea. The evidence showed that the plea agreement Defendant signed expressly stated:

> The defendant shall register with the sheriff of the county in which the defendant resides, no later than thirty (30) days after being released from the custody of the Corrections Department or being placed ·on probation or parole, and shall thereafter comply with all other provisions of the Sex Offender Registration Act, pursuant to § 29–11A–1 through § 29–11A–8.

Defendant testified that he had only one hour to both make up his mind whether to plead and to come to court to enter a plea, and that after he got to the courthouse, he had less than five minutes to review the written plea agreement. Defendant's attorney denied telling Defendant that he had only an hour to agree to the plea agreement. Defendant's attorney testified that his conference with Defendant to review the written plea agreement, which took place immediately before Defendant's entry of his plea, lasted five to ten minutes, but that Defendant was aware of the plea agreement and Defendant's attorney had discussed it with him prior to meeting at the courthouse. He further testified that he and Defendant went over the elements in the plea agreement page by page, and that although he and Defendant did not

discuss the provision regarding sex offender registration, they did go over it briefly, and Defendant did not ask any questions about the provision or about SORNA. Defendant testified that his attorney never advised him of any requirement to register or of any consequences of registration as a sex offender. Defendant also testified that he was not advised by anyone, and did not understand at the time of his plea, that he would have to register as a sex offender, that he would have to register for a ten-year period,[1] that failure to register constituted a fourth degree felony, or that there were public access and community notification consequences.[2]

{7} Defendant further testified that his attorney led him to believe that he would receive a sentence of probation with counseling. He also stated that his attorney promised that he would not receive any prison time. The attorney testified that it was his practice never to make such promises, that he had no such agreement with the district attorney, and that he told Defendant that if Defendant had a good evaluation he might "do pretty well" at sentencing. Defendant's attorney also testified that the plea agreement was not the first Defendant's attorney had discussed with Defendant. Negotiations for a plea agreement began in September 2000. There were "a lot of negotiations back and forth." The attorney further testified that he told Defendant it was his professional advice to take the plea offer. Defendant presented no evidence that the District Attorney's office made any promise that Defendant would receive only probation. Defendant claimed he could not remember the answers that he gave to the court's questions during the plea proceeding.

{8} Defendant's attorney testified that he had no concerns about Defendant's understanding of the proceedings, until immediately after the plea hearing. There was evidence that Defendant appeared to have had

---

1. The period for Defendant is actually twenty years. *See* § 29–11A–5(D)(2), (5) (requiring a twenty-year registration for criminal sexual contact of a minor in the third degree and also for attempt to commit that crime).

2. In this appeal, Defendant does not assert ineffective assistance of counsel as a separate ground

for reversal. For a thorough discussion of the law with respect to whether defense counsel must discuss with their client the collateral consequences of a plea of guilty, see Gabriel J. Chin & Richard W. Holmes, Jr., *Effective Assistance of Counsel and the Consequences of Guilty Pleas*, 87 Cornell L.Rev. 697 (2002).

an emotional breakdown immediately after the plea hearing. According to Defendant, "[t]he last thing [he] remember[ed][was] getting up to the podium and the next thing [he] remember[ed] after that [was] driving down I–10 to go to a jobsite." Defendant's attorney described Defendant as first being off balance and having difficulty speaking, and then curling up in a fetal position muttering incomprehensibly. He thought this breakdown stemmed from a severe psychological impairment.

{9} In March 2002, the court denied Defendant's motion to set aside his plea, concluding that the "plea was entered knowingly, intelligently and voluntarily." The court thereafter sentenced Defendant to nine years of imprisonment, suspending four years of the sentence with supervised probation. The court's judgment informed Defendant of his duty to register under and "comply with all other provisions of" SORNA. *See* § 29–11A–7(A). Defendant appeals.

## DISCUSSION

### Standard of Review

{10} Defendant moved to set aside his plea before he was sentenced. Both parties state the standard of review to be abuse of discretion. This is consistent with our case law.[3] *See State v. Lozano*, 1996–NMCA–075, ¶ 9, 122 N.M. 120, 921 P.2d 316 (stating that the trial court is to exercise its discretion whether to permit a pre-sentence plea withdrawal and that we review the court's ruling "to determine whether, under the facts offered in support of the motion, the trial court abused its discretion"); *accord State v. Clark*, 108 N.M. 288, 292, 772 P.2d

322, 326 (1989), *overruled on other grounds by State v. Henderson*, 109 N.M. 655, 789 P.2d 603 (1990); *State v. French*, 92 N.M. 94, 96, 582 P.2d 1307, 1309 (Ct.App.1978); *State v. Kincheloe*, 87 N.M. 34, 36, 528 P.2d 893, 895 (Ct.App.1974); *see also State v. Martinez*, 2002–NMSC–008, ¶ 42, 132 N.M. 32, 43 P.3d 1042 (Serna, J., dissenting) (stating "[the] Court reviews the trial court's ruling on a motion to withdraw the plea prior to sentencing for an abuse of discretion").

{11} A trial court "abuses its discretion when it acts unfairly or arbitrarily, or commits manifest error." *State v. Herrera*, 2001–NMCA–073, ¶ 7, 131 N.M. 22, 33 P.3d 22 (quoting *State v. Barnett*, 1998–NMCA–105, ¶ 12, 125 N.M. 739, 965 P.2d 323). "A denial of a motion to withdraw a guilty plea constitutes manifest error when the undisputed facts establish that the plea was not knowingly and voluntarily given." *State v. Garcia*, 121 N.M. 544, 546, 915 P.2d 300, 302 (1996).

{12} We do not, however, review whether a defendant must be advised of certain consequences of a plea as a matter of due process of law for abuse of discretion. That issue is one of law that we review de novo. *State v. Brothers*, 2002–NMCA–110, ¶ 25, 133 N.M. 36, 59 P.3d 1268, *cert. quashed*, 134 N.M. 123, 73 P.3d 826 (2003).

### Plea Proceeding Due Process Requirements

{13} A guilty plea does not violate the Due Process Clause where it is made knowingly, voluntarily, and intelligently. *North*

---

3. Our courts have not tackled the issue whether a pre-sentence motion to withdraw a plea should be reviewed under what might be interpreted as a different standard or a variation of the abuse of discretion standard found in the committee commentary to Rule 5–304 NMRA 2003 (quoting American Bar Association Standards Relating to Pleas of Guilty, § 2.1 (approved draft 1968)): "Before sentence, the court in its discretion may allow the defendant to withdraw his plea *for any fair and just reason* unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea." (internal quotation marks omitted and emphasis added). While the committee commentary is not binding on the Supreme Court, it is persuasive authority. *State v. McCrary*, 100 N.M. 671, 673, 675 P.2d 120, 122

(1984). Federal courts appear to follow the American Bar Association Standards. *See* Fed. R.Crim.P. 11(d)(2)(B) (2003) ("A defendant may withdraw a plea of guilty ... after the court accepts the plea, but before it imposes sentence if ... the defendant can show a fair and just reason for requesting the withdrawal."); *United States v. Gamble*, 327 F.3d 662, 665 (8th Cir.2003) (applying the predecessor to Federal Rule of Criminal Procedure 11(d)(2)(B), and stating that "[p]ost-plea regrets by a defendant ... are not a fair and just reason for a district court to allow a defendant to withdraw a guilty plea, or for this court to reverse the district court" (internal quotation marks and citation omitted)). We leave this question for another day.

*Carolina v. Alford,* 400 U.S. 25, 31, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Brady v. United States,* 397 U.S. 742, 747, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Boykin v. Alabama,* 395 U.S. 238, 242–44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (holding that facts establishing the voluntariness of a plea must appear in the record to facilitate appellate review). In *Brady,* the United States Supreme Court stated that "[a] plea of guilty entered by one fully aware of the direct consequences, ... must stand unless induced by threats ..., misrepresentation," or improper promises. 397 U.S. at 755, 90 S.Ct. 1463 (internal quotations marks and citation omitted).

{14} In New Mexico, "[a] plea agreement ... must be interpreted, understood, and approved by the trial court." *State v. Mares,* 119 N.M. 48, 51, 888 P.2d 930, 933 (1994). A "court [is not] to accept a guilty plea absent an affirmative showing on the record that the plea was voluntary and intelligent." *Garcia,* 121 N.M. at 547, 915 P.2d at 303. "The defendant must understand his guilty plea and its consequences." *Id.* The burden is on Defendant to "demonstrate that the failure to comply with the prescribed plea procedure prejudiced his ability to knowingly and voluntarily enter his plea." *State v. Jonathan B.,* 1998–NMSC–003, ¶ 7, 124 N.M. 620, 954 P.2d 52.

{15} Under Rule 5–303(E) NMRA 2003, before accepting a plea of guilty, the court must inform the defendant of, and determine that the defendant understands, the following matters:

(1) the nature of the charge to which the plea is offered;

(2) the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law for the offense to which the plea is offered;

(3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made;

(4) that if the defendant pleads guilty, no contest or guilty but mentally ill there will not be a further trial of any kind, so that by pleading guilty, no contest or guilty but mentally ill the defendant waives the right to a trial; and

(5) that, if the defendant is convicted of a crime, it may have an effect upon the defendant's immigration or naturalization status.

{16} "Rule 5–303 essentially codifies the ... mandate expressed in *Boykin v. Alabama,*" and it is "designed to ensure a guilty plea is made knowingly and voluntarily." *Garcia,* 121 N.M. at 546, 547, 915 P.2d at 302, 303. Defendant asserts that the court failed to follow Rule 5–303(E) and that his plea was not voluntary because he was not fully advised of the consequences of his plea. *See* Rule 5–303(F) (requiring court to determine that plea is voluntary); *Garcia,* 121 N.M. at 547, 915 P.2d at 303 ("The defendant must understand his guilty plea and its consequences," and must also be informed of "the permissible range of sentences." (internal quotation marks and citation omitted)); *State v. Robbins,* 77 N.M. 644, 648, 427 P.2d 10, 12 (1967) ("[W]hen a plea of guilty is made voluntarily after proper advice of counsel and with a full understanding of the consequences, the plea is binding."). "Failure to advise a defendant of the potential penalties presumptively affects defendant's substantial rights and renders the plea unknowing and involuntary." *Garcia,* 121 N.M. at 549, 915 P.2d at 305. More particularly, Defendant asserts the trial court's failure to advise him at the time of the plea that he was required to register under SORNA for a ten-year period constituted a failure to fully inform Defendant of the consequences of his plea, making his plea involuntary, and requiring the court to grant his motion to set aside the plea.[4]

**The Consequences of the Plea: Registration Under SORNA**

{17} Among the consequences of being a sex offender under SORNA, Defendant is

---

4. While Defendant's briefs assert only the period of continuing registration as the consequence in question, we will also consider the consequences that willful failure to register constitutes a fourth degree felony and that registration in Defendant's circumstances trigger the public access, active notification, and Internet website consequences under SORNA.

automatically subject to certain registration requirements. He is required to register with the county sheriff of the county in which he resides. § 29–11A–4(A). As a resident sex offender, registration includes providing his name, date of birth, social security number, current address, place of employment, sex offense for which convicted, and date and place of conviction. § 29–11A–4(B). The sheriff is required to obtain a photograph, distinguishing features, and fingerprints of Defendant. § 29–11A–4(E). Imposed on Defendant is a continuing duty to notify the sheriff of any change of address if the new residence is in the same county; and if Defendant moves to another county, he is required to notify the sheriffs of both the prior county and the new county in which he establishes a new residence. § 29–11A–4(F), (G). The county sheriff is to maintain a local registry of sex offenders and to forward the registration information to the State Department of Public Safety (the Department). § 29–11A–5(A), (B). The Department is required to maintain a central registry of sex offenders and to participate in the national sex offender registry administered by the United States Department of Justice. § 29–11A–5(C).

{18} Further, based on his conviction of criminal sexual contact of a minor in the third degree, Defendant is required to renew his registration annually, and the Department is required to retain the registration information for a period of twenty years following conviction or release from probation or parole, whichever occurs later. §§ 29–11A–4(H)(1), –5(D)(2), (5). For some lesser crimes, the period is ten years. §§ 29–11A–4(H)(2), –5(E). A sex offender willfully failing to comply with a registration requirement is guilty of a fourth degree felony. § 29–11A–4(I).

{19} SORNA's public access to information, active notification, and Internet website provisions, which we refer to in this opinion as "notification provisions," are triggered based on conviction of specific sex offenses. See § 29–11A–5.1(A). Among the crimes to which Defendant pled guilty are criminal sexual contact of a minor in the third degree and attempted criminal sexual contact of a minor in the third degree, both of which trigger SORNA's notification provisions. See § 29–11A–5.1(A)(2), (5). Under the notification provisions, the registration information of those convicted of these specific crimes is, upon request, to be made available by the sheriff, the district attorney, chief municipal law enforcement officer, or by the secretary of the Department, to any "person who wants to obtain registration information." § 29–11A–5.1(B). Further, "with the exception of the sex offender's social security number," the registration information is to be provided to "every licensed daycare center, elementary school, middle school and high school within a one-mile radius of the sex offender's residence." § 29–11A–5.1(D). In addition, the Department is authorized to provide information to the public through an Internet website, including the sex offender's place of employment when that "employment requires him to have direct contact with children." § 29–11A–5.1(E).

### Direct vs. Collateral Consequences of a Plea

{20} A number of jurisdictions have addressed whether a court has a constitutional duty to advise a defendant of automatic consequences under sex offender registration laws upon entry of a plea. Almost unanimously, the cases hold that the registration requirements under sex offender registration laws constitute collateral, as opposed to direct consequences of the plea, the effect being that the court is not required to advise a defendant of the consequences as a matter of due process.

{21} The rationale most used in foreclosing constitutional relief is that the court need only advise a defendant of direct consequences of a plea, that is, consequences that are punitive or that otherwise have a definite, immediate, and largely automatic effect on the range of a defendant's punishment, and that sex offender registration is a collateral consequence, and not a direct consequence, of a plea because registration is remedial and regulatory, not punitive and not a penal consequence. See Boutwell v. State, 776 So.2d 1014, 1016 n. 2 (Fla.Dist.Ct.App.2001) (holding "sex offender probation" not to have a

"definite, immediate, and largely automatic effect on the range of ... punishment"); *Ray v. State,* 133 Idaho 96, 982 P.2d 931, 934–36 (1999) (following "majority view" that registration is a collateral consequence because it is "largely remedial in purpose, not punitive"); *State v. Legg,* 28 Kan.App.2d 203, 13 P.3d 355, 358 (2000) (holding registration "not penal in nature or a direct consequence to a plea"); *Kaiser v. State,* 641 N.W.2d 900, 904, 907 (Minn.2002) (holding that, although registration was a "definite, immediate and automatic" consequence of a guilty plea, it was nevertheless unrelated to the defendant's punishment and was a collateral consequence of the plea, stating "that definite, immediate and automatic consequences must be punitive and a part of a defendant's sentence in order to constitute direct consequences"); *Nollette v. State,* 118 Nev. 341, 46 P.3d 87, 89–90 (2002) (following rationale of majority of jurisdictions deciding the issue); *Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367, 406 n. 18 (1995) (stating that the statute's registration and notification requirements were collateral consequences of the plea because "these laws are not punitive"); *Ducker v. State,* 45 S.W.3d 791, 796 (Tex.Crim.App. 2001) (stating that "[t]he registration requirement did not affect the range of punishment"); *State v. Ward,* 123 Wash.2d 488, 869 P.2d 1062, 1076 (1994) (en banc) (holding duty to register is a collateral consequence of a plea "[b]ecause registration as a sex offender does not alter the standard of punishment"); *State v. Bollig,* 232 Wis.2d 561, 605 N.W.2d 199, 206 (2000) (holding registration not punishment, hence a collateral rather than direct consequence). *Contra People v. McClellan,* 6 Cal.4th 367, 24 Cal.Rptr.2d 739, 862 P.2d 739, 745, 748 (1993) (in bank) (holding registration requirement to be "a statutorily mandated element of punishment for the underlying offense," and that the court must "advise a defendant that, as a consequence of his or her plea of guilty ..., the defendant must register as a sex offender"); *State v. Breiner,* 562 N.W.2d 565, 566 (N.D.1997) (holding failure to inform defendant that he must register "caused a manifest injustice so the court abused its discretion in denying withdrawal of [the defendant's] guilty plea"),

overruled in part on other grounds by *State v. Burr,* 598 N.W.2d 147 (N.D.1999).

{22} Another rationale used to foreclose constitutional relief is that registration is not a duty imposed by the court and is out of the control of the court; that is, like the right to carry firearms, which can be removed as a consequence of a felony conviction, *see* NMSA 1978, § 30–7–16 (2001), although constitutionally protected in New Mexico, *see* N.M. Const. art. II, § 6, any liberty right claimed by a sex offender as impaired by registration and notification provisions is a consequence that does not have to be explained by a court upon its acceptance of a plea. *See Patterson v. State,* 985 P.2d 1007, 1019 (Alaska Ct.App.1999) ("[A] collateral consequence is one that originates outside the court."); *Ray,* 982 P.2d at 936 (stating that "registration is a consequence of conviction over which the district judge has no direct control"); *Ward,* 869 P.2d at 1071, 1075–76 (involving sex offender law authorizing, like SORNA, dissemination of registration information to the general public and holding that registration is a collateral consequence of a guilty plea); *see also State v. Young,* 112 Ariz. 361, 542 P.2d 20, 22 (1975) (in banc) (holding registration provisions to be collateral and, citing a rule of criminal procedure, holding that a defendant "must only be informed of any special conditions regarding sentence, parole or commutation imposed by statute". (internal quotation marks and citation omitted)); *Kaiser,* 641 N.W.2d at 905–06 (comparing statutes criminalizing possession of firearms by felons as being similar to statutes requiring registration, because both serve the purpose of "increas[ing] public safety by requiring a specific class of offenders to provide information to law enforcement authorities to assist in keeping track of them").

{23} New Mexico has not addressed the direct versus collateral consequence issue presented in this case. Our courts have recognized that a defendant must be informed of "the permissible range of sentences." *Garcia,* 121 N.M. at 547, 915 P.2d at 303 (internal quotation marks and citation omitted); *cf. State v. Montler,* 85 N.M. 60, 61, 509 P.2d 252, 253 (1973) (stating that a defendant

must have knowledge of the consequences of the plea, which includes being informed of "the permissible range of sentences"); *State v. Miranda,* 100 N.M. 690, 693, 675 P.2d 422, 425 (Ct.App.1983) (holding that use of plea in a sodomy proceeding in subsequent habitual offender proceeding to be collateral consequence of deferred sentence because "there exists a right to assume that defendants will not be guilty of a subsequent offense but will be law-abiding persons in the future"); *see also State v. House,* 1998–NMCA–018, ¶ 69, 124 N.M. 564, 953 P.2d 737 (citing *Miranda* in holding that lower court did not have to explain to the defendant that by entering a plea he could be subjected to enhanced sentences for future DWI-related offense, and stating that "a defendant need not be informed of all collateral consequences to pleading guilty to make the guilty plea knowing, intelligent, and voluntary"), *rev'd on other grounds,* 1999–NMSC–014, 127 N.M. 151, 978 P.2d 967.

**Defendant Was Not Deprived of Due Process**

{24} We are persuaded by the rationale of the majority of jurisdictions, which hold sex offender registration law consequences to be collateral consequences of a plea and therefore not consequences that require a court, under the Due Process Clause, to advise a defendant of the consequences of registration under SORNA. SORNA is primarily remedial in purpose and effect. *See State v. Druktenis,* 2004–NMCA–032, ¶¶ 26–38, 135 N.M. 223, 86 P.3d 1050, 2004 WL 601684 (No. 22,437) (filed Jan. 30, 2004). Although the registration and notification provisions under SORNA are immediate and automatic, they do not constitute punishment for a crime. *See id.* Nor does the court impose SORNA provisions or have discretion to modify them in accepting a plea. *See Brothers,* 2002–NMCA–110, ¶¶ 22–23, 133 N.M. 36, 59 P.3d 1268.

{25} We determine that SORNA registration and notification consequences are collateral, not direct, consequences of a plea of guilty. We, therefore, hold that a court's failure to advise a convicted sex offender of SORNA registration and notification require-

ments does not render a plea involuntary or otherwise rise to the level of a constitutional due process violation.

{26} Although we decline to hold that Defendant's plea was constitutionally defective, we nevertheless note that the consequences of a plea are quite serious. Nothing in our decision today precludes our Legislature from requiring that a sex offender be advised by the trial court of the SORNA provisions. At least two other state legislatures have required this advice. *See* Mass. Gen. Laws Ann. ch. 6, § 178E(d) (2003); Tex.Crim. Proc.Code Ann., § 26.13(a)(5) (Vernon Supp. 2001). Similarly, just as our Supreme Court has required courts to advise defendants at the time of their plea that their conviction may result in immigration consequences, *see* Rule 5–303(E)(5), nothing in our decision today suggests that it would not be appropriate to add a further admonition in Rule 5–303(E) in regard to the automatic and immediate registration and notification consequences under SORNA. *Cf.* Alaska Rules of Crim. Proc., Rule 11(C)(4) (2003). Whether the requirement of advice to a defendant originates through legislation or Supreme Court amendment of Rule 5–303(E), we think there is little question that adequate pre-plea knowledge of the SORNA registration and notification consequences of a plea ought to be a part of criminal procedure.

**Defendant's Claims that His Plea Was Not Entered Knowingly and Voluntarily Are Not Supported**

{27} The second issue Defendant raises is whether his asserted innocence "throughout the entire proceedings, particularly at sentencing," his meritorious defense, the inadequate time he was given to review the plea agreement, his attorney's unpreparedness to try the case and failure to adequately advise him regarding the consequences of the plea, and his family's dire economic straits and his separation from his family, resulted in a constitutionally defective plea, requiring the court to grant his motion to set aside the plea. Defendant's summary of the evidence in his brief in chief to support this point is as follows:

[E]vidence was presented to the court that [Defendant] had a meritorious defense, had several eye witnesses that he was never alone with the child, had been separated from his family for a lengthy period of time, that his family was in dire economic straits and had lost their home, that his attorney had advised him that he thought he would receive probation, and a plea seemed to be the right thing to do at the time because defendant would be rejoining his family and could take care of family economic matters and other family needs. In addition, immediately after the entrance of the plea, [D]efendant had a breakdown as observed not only by his attorney but his wife. He was virtually incoherent for a period of time. It is important factually to note that the allegations of criminal sexual contact of a minor [that] [D]efendant had touched inappropriately the child while wrestling with the child. One also has to address the zealous prosecution, particularly in light of the fact that the mother of the victim married a police officer.

Defendant testified that his two children and his wife were eye witnesses who could testify regarding the circumstances giving rise to the criminal charges.

{28} Defendant's contentions lack support. As to his professed innocence, Defendant admitted at the plea proceeding that he had "intentionally . . . touched [one of the boys] on his buttocks, . . . that at one point he . . . touched [the child's] penis . . . in a[n] . . . intentional way, and that another time he caused [the child] to touch his own . . . groin area." He made no offer of proof of what any eye witness would specifically state if they were called at trial to testify.

{29} Further, no evidence exists in the record that Defendant professed innocence during his plea proceeding. To the contrary, every indication from the colloquy that occurred between the court and Defendant was that Defendant understood the charges, understood the penalties, understood his constitutional rights and that he was waiving them, understood the factual basis on which the charges were brought, agreed with the facts, and fully intended to enter a plea of guilty. At no time did Defendant say anything that

would indicate he was reluctant to plead guilty, that he had been unduly rushed into agreeing to enter a plea, or that he was entering the plea based on fear or concern that, even though he was innocent, his attorney was not prepared for trial and he would therefore likely be convicted although innocent.

{30} Defendant and his wife both testified to the pressures and adverse consequences on their family due to Defendant's arrest and incarceration for violation of conditions of his release pending trial. There was evidence that their family lost their home and were staying with Defendant's wife's parents. Defendant's stress and worry about being apart from his family and about their difficult financial condition stemmed from his being incarcerated. These external forces do not constitute circumstances that make a plea constitutionally involuntary. *See Politte v. United States,* 852 F.2d 924, 930 (7th Cir. 1988) (holding that the entering of a plea because of concern for one's family's well-being "does not equate with duress in the constitutionally impermissible sense nor does it render his subsequent plea involuntary"). Also, while his emotional breakdown after his plea might be tied to regret that he chose to enter the plea, this circumstance is insufficient to require the court to conclude, even in combination with the totality of Defendant's showing, that the plea was not voluntarily and knowingly entered. *See United States v. Noriega–Millan,* 110 F.3d 162, 167 (1st Cir. 1997) ("[W]e cannot set aside a plea where the appellant has suffered no concrete prejudice other than entering a plea he now regrets." (internal quotation marks and citation omitted)); *State v. Tipton,* 78 N.M. 600, 602, 435 P.2d 430, 432 (1967) (stating that a defendant's regret regarding the entering of a plea "afford[s] no basis for now holding the guilty plea to have been involuntary"); *Mondragon v. State,* 84 N.M. 175, 177, 500 P.2d 999, 1001 (Ct.App.1972) (recognizing that a plea is not involuntary "[m]erely because [a defendant] was guided by his attorney's advice and now regrets this decision").

{31} Finally, Defendant testified that the mother of the child, Ms. Melendres, caused the charges to be brought against him be-

cause Defendant refused to leave his wife and the charges were "a fabrication that's made up to be vindictive" against him. Whatever facts underlay this assertion, and underlay Defendant's assertions of innocence, are facts that should have been discussed by Defendant with his attorney in the process of evaluating the strength of his defense and whether to enter a plea. Although Defendant testified to the contrary, Defendant's attorney testified that Defendant discussed his defenses with him. The attorney also testified that he was ready to proceed to trial notwithstanding Defendant's testimony that they had not discussed the trial, that they had not made a witness list, and that no one had been interviewed in preparation for trial.

{32} On the evidence presented, we are unable to conclude that the trial court abused its discretion in refusing to permit Defendant to set aside his plea.

**CONCLUSION**

{33} We affirm.

{34} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CELIA FOY CASTILLO, Judges.