This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                  NO.  31,097

**LUCAS TRAMMELL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela-Shepherd, District Judge**

Gary K. King, Attorney General
Yvonne M. Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Chief Judge.**

{1}     Lucas Trammell (Defendant) appeals the habitual offender enhancement of four felony convictions, alleging that (1) he was subjected to an illegal original sentence, (2) his plea was involuntary because he was not advised that he would have to register as a sex offender, and (3) several of his sentences had expired by the time the State filed its habitual offender proceedings. We hold that being subjected to some sex offender-related conditions of probation did not violate Defendant's rights or impose an illegal sentence. Defendant's plea was not required to be withdrawn for ineffective counsel. We also rule that he waived the time limits for habitual proceedings, which were properly filed and adjudicated. We affirm the district court.

**I.     BACKGROUND**

{2}     Pursuant to a plea agreement, Defendant was convicted of five felony counts related to his theft of a pick-up truck. Because a minor child was in the truck during the theft, two of those pleas were to negligent child abuse and false imprisonment of a minor child, which required him to register under the Sex Offender Registration and Notification Act (SORNA) and have his probation and parole supervised by the sex offender unit. NMSA 1978, §§ 29-11A-1 to -10 (1995 as amended through 2013). His sentence was enhanced on one of the counts by one year for being an habitual offender. In his standard plea agreement, Defendant admitted one prior felony and waived time limits by agreeing to habitual offender enhancement of the remaining

four sentences should he violate probation or parole "before completing the sentence in this case[.]" Defendant's sentences were imposed consecutively. He was released from prison to serve two years probation and parole as ordered by the district court and acknowledged by Defendant on the probation order. Six months prior to his release from prison, Defendant was informed that, upon his release, he would be subject to registration as a sex offender under SORNA. He did not object to this and, upon his release, duly registered as a sex offender. The probation and parole division assigned him to their sex offender unit—the distinguishing requirement of which, for purposes of this case, was a behavioral contract Defendant executed, in which he agreed not to have unsupervised contact with minors, or to date or marry a person with custody of minors without obtaining prior permission of his probation officer.

{3}     About a year-and-a-half after his release, Defendant was arrested when he battered a fourteen-year-old boy during a domestic disturbance with the boy's mother, Defendant's girlfriend. Defendant had also violated the terms of his behavioral contract by not receiving prior permission to date or marry anyone who has custody of a minor child. Defendant moved to dismiss the second allegation, alleging that the requirement was not part of the sentence ordered by the court and was a violation of his due process rights. Both probation and parole violations were filed against him as a result. With roughly six months remaining on his sentence, the State hurriedly initiated habitual offender enhancement proceedings. The State withdrew the

3

probation violation. Defendant's parole was revoked because he had violated the conditions of probation, requiring him to comport himself while on probation as a law-abiding citizen and abide by his probation officer's assessment of his risk as an offender. Based on the violation of Defendant's parole, the State sought to impose the remaining four habitual enhancements to his sentence as per his plea agreement.

{4} Defendant moved to modify his sentence based on his argument that probation under SORNA was illegal and to withdraw his plea for ineffective assistance of counsel. Defendant also argued against imposition of habitual offender enhancement on the four counts, alleging that his sentence had largely been served, and the State had no further time in which to proceed. Defendant contested the terms of his probation and parole stating that, by supervising him in the sex offender unit and requiring additional terms of probation, the terms of his probation and parole were illegal. Defendant also sought to withdraw his plea, contending that, at the time of the plea, he was not made aware he would be subject to sex offender registration or conditions of sex offender probation and parole. Additionally, he argued that, since he was not informed of the collateral consequences of his plea, he suffered ineffective assistance of counsel. The district court imposed four, one-year enhancements on the remaining counts and denied Defendant's motions.

## II.    DISCUSSION

### A.    The Sex Offender Registration Requirement Was Not Illegal

4

{5}     Defendant argues that his conviction for false imprisonment did not, by statute, require him to be placed on probation/parole as a sex offender under NMSA 1978, Section 31-20-5.2 (2003), a matter in which the State agrees.  Important in this case is the distinction between the statutory requirement for Defendant to register under SORNA,[1] and the statute's exemption of him from both notification requirements[2] and to sex offender requirements for probation and parole.[3]  As an initial matter, we note that Defendant was not subjected to the indeterminate parole period with a five-year minimum that is required to be imposed on sex offenders or the mandatory treatment, GPS monitoring, or other statutory requirements for sex offenders.[4]  Instead, his probation and parole was only for two years.  We conclude that he was not subject to the requirements of sex offender probation and parole as it is defined by statute.

{6}     Defendant argues that he was "subjected to the requirements of sex offender probation and parole" based on two things.  He was assigned to and supervised by the

---

[1]Section 29-11A-3(E)(3) (stating that anyone convicted of false imprisonment of a minor under the age of eighteen, of whom the offender was not a parent, must register under SORNA).

[2]Section 29-11A-5.1 (failing to identify the crime of false imprisonment of a minor as one subject to SORNA's sex offender notification requirements).

[3]NMSA 1978, § 31-21-10.1(I) (2007) (excluding conviction for false imprisonment of a minor from consideration as a sex offender for purposes of sex offender probation/parole requirements).

[4]*See* § 31-21-10.1(A), (E).

5

sex offender unit of the probation and parole department, and he was "subjected to the heightened requirements of sex offender probation and parole" when compelled to sign the behavioral agreement mentioned above. For the reasons that follow, we cannot conclude that this was improper.

{7}     Defendant's motion to modify his sentence, filed a year-and-a-half after he began his probation and only after the State filed its probation violation report, asserted that he was placed on sex offender probation. He acknowledged that such probation frequently includes a number of conditions present in the statute, but stated that he was only subjected to a restriction on his associations. Defendant asserts that this restriction by the sex offender division of the probation and parole department constituted a legally unauthorized addition to his sentence.

{8}     In *State v. Leon*, we found it legitimate for someone who did not commit an offense requiring sex offender supervision to be supervised by the sex offender unit and have restricted contact with minors. 2013-NMCA-011, ¶ 3, 292 P.3d 493, *cert. quashed*, 2013-NMCERT-010, 313 P.3d 251. In *Leon*, the defendant was convicted of offenses outside the purview of sex offender designation for probation/parole purposes and was given a suspended sentence that, as here, placed him on supervised probation on standard conditions. 2013-NMCA-011, ¶ 2. The period was for less than the mandatory minimum required by Section 31-20-5.2 for sex offenses. Once on probation, he signed the same behavioral contract as Defendant in the present case,

6

which included a requirement that he have no contact with persons under eighteen years of age without permission of his probation officer. *Leon*, 2013-NMCA-011, ¶ 3. He was also assigned to the sex offender unit for supervision as a result of a *prior* conviction for a sex offense with a minor. Although the defendant asserted that these requirements of his probation bore no reasonable relationship to his rehabilitation, we disagreed. We held that the terms were reasonably related to his convictions because the convictions for which he was serving probation involved providing alcohol to and contributing to the delinquency of minors, and his prior conviction was for a sex offense involving minors. *Id.* ¶ 32.

**{9}** In this case, Defendant's conviction is for non-sex crimes involving a minor. Defendant is not subject to either the SORNA notification provisions or Section 31-20-5.2's sex offender probation requirements. Defendant signed an order of probation at the time of his sentencing that subjected him to "standard and special conditions of probation" that included not associating with "any person identified by [his p]robation/[p]arole [o]fficer as being detrimental to [his p]robation supervision." Defendant also agreed to "follow all orders of instructions of [his p]robation/[p]arole [o]fficer[,] including actively participating in and successfully completing any level of supervision and/or treatment program . . . as deemed appropriate by the [p]robation/[p]arole [o]fficer." Defendant's parole supervision falls under these broad terms.

{10}   In *Leon*, we held that the conditions of probation imposed were within the discretion given the probation/parole authorities by the district court. 2013-NMCA-011, ¶ 27; *see* NMSA 1978, § 31-21-4 (1963) (stating that the probation and parole act's purpose is to rehabilitate offenders, in part through probation on conditions considering "their individual characteristics, circumstances, needs[,] and potentialities"). The interest in deterring future misconduct by imposing some restrictions on a probationer's liberty and promote his rehabilitation are furthered by requiring Defendant to have his contacts with minors monitored and controlled, given that his crime involved the apparent disregard of a child's safety.

> We will not set aside the terms and conditions of probation imposed by the sentencing court unless they (1) have no reasonable relationship to the offense for which the defendant was convicted, (2) relate to activity which is not itself criminal in nature, and (3) require or forbid conduct which is not reasonably related to deterring future criminality.

*Leon*, 2013-NMCA-011, ¶ 27 (alteration, emphasis, internal quotation marks, and citation omitted).

{11}   We conclude that the probation office did no more than assign Defendant to a particular office that used a particular form, the names of both which included the words "sex offender." Having his parole supervised by the sex offender office does not signify that Defendant was a sex offender for purposes of his sentence, and he supplies no facts compelling a contrary finding. The district court had the authority to order that Defendant "be placed on probation under the supervision, guidance[,] or

8

direction of the adult probation and parole division," NMSA 1978, § 31-20-6(C) (2007), including being required to "satisfy any other conditions reasonably related to . . . [D]efendant's rehabilitation." Section 31-20-6(F). In the absence of specific conditions imposed by the court, the probation and parole board also has specific authority to adopt regulations "concerning the conditions of probation which apply." NMSA 1978, § 31-21-21 (1963). Defendant signed the behavioral contract, obligating him to obtain permission before having unsupervised contact with minors or dating or marrying anyone who had custody of minor children. As the State points out, this condition does not have a specifically sexual component and relates directly to Defendant being supervised as the undisputed result of crimes committed against a minor child. Requiring some level of supervision for Defendant to be around children is a reasonable condition for a person convicted of falsely imprisoning and negligently abusing a child.

{12} Sex offender registration is a statutory mandate, which the district court plays no role in imposing. *State v. Myers*, 2011-NMSC-028, ¶ 44, 150 N.M. 1, 256 P.3d 13. Sex offender registration is a collateral, not direct, consequence of a plea. *Id.* ¶ 43. Registration is not a penalty for conviction, nor part of a sentence, and is a purely remedial requirement outside the mandatory sentencing provisions provided elsewhere by statute for sentencing sex offenders. *State v. Druktenis*, 2004-NMCA-032, ¶ 32, 135 N.M. 223, 86 P.3d 1050 ("[T]he provisions of SORNA do not involve affirmative

9

disability or restraint; have not historically been regarded as punishment; do not come into play only on a finding of scienter; only incidentally, if at all, promote traditional aims of retribution and deterrence; and have a rationally connected, nonpunitive purpose."); *State v. Moore*, 2004-NMCA-035, ¶ 24, 135 N.M. 210, 86 P.3d 635. The district court had no obligation at sentencing to inform Defendant of his statutory obligation to register as a sex offender upon his release and failing to do so does not render his plea involuntary. *Id.* ¶ 25. Although the crime of which Defendant was convicted may no longer be subject to registration if the lack of intent to commit a sexual offense can be proven, this change in law was not raised, and it is not an issue in this case. *See* § 29-11A-3(I)(7) (removing automatic requirement of SORNA registration to certain offenses).

{13}    Because SORNA does not dictate aspects of sentencing, we conclude that Defendant was not subjected to sex offender probation. As Defendant points out, his judgment and sentence does not mention sex offender status under that statute and indicates that he should be placed on standard supervised probation and parole. He also concedes that none of the mandatory aspects of sex offender probation required by Section 31-20-5.2 ever occurred.

{14}    We hold that Defendant was subjected to reasonable terms of standard probation as were deemed appropriate by the probation/parole division to reflect his "characteristics, circumstances, needs[,] and potentialities." Section 31-21-4. We

10

now address whether Defendant received constitutionally ineffective assistance of counsel.

## C.      Defendant Did Not Receive Ineffective Assistance of Counsel

{15}      In support of his argument that his counsel unconstitutionally failed to inform him that he would be required to register as a sex offender, Defendant relies on *State v. Edwards*.   2007-NMCA-043, ¶ 31, 141 N.M. 491, 157 P.3d 56 (imposing requirement of knowledge of the crimes enumerated in Section 29-11A-3(E) as part of constitutionally sufficient representation and holding that failing to discharge the affirmative duty of informing a defendant of the registration consequences constitutes ineffective assistance).   The district court held that *Edwards* did not apply retroactively to Defendant's 2004 plea, and we agree.

{16}      Defendant cites our opinion in *State v. Ramirez,* 2012-NMCA-057, 278 P.3d 569, *cert. granted*, 2012-NMCERT-006, 294 P.3d 1244, that retroactively applied *Padilla v. Kentucky*, 559 U.S. 356, 359 (2010).  However, that reliance is misplaced, as *Ramirez*'s holding that *Padilla* could be retroactively applied was reversed by the United States Supreme Court in *Chaidez v. United States*, 133 S. Ct. 1103, 1105 (2013) (holding that *Padilla* announced a new rule of law and thus was not retroactive in its application).  Defendant asserts no countervailing argument, and we therefore follow *Chaidez*'s rule and determine that *Edwards* does not apply retroactively. Therefore, Defendant's counsel was not obligated to inform him that sex offender

11

registration could be a collateral consequence of his conviction. *State v. Guerra* requires a showing of both deficient performance and prejudice to establish a claim of ineffective assistance. 2012-NMSC-027, 284 P.3d 1076. Since counsel's performance was not deficient, we do not need to address Defendant's argument that he was prejudiced by his counsel's performance. *Ramirez*, 2012-NMCA-057, ¶ 8.

## D.      Enhancement of Defendant's Sentence Was Proper

{17}      Defendant's sentence was enhanced on four counts, using his violation of parole as the predicate. He contends that he served four of five sentences imposed, and the State could only enhance the one that remained. Defendant argued below that each of the consecutive sentences in his case expired one after the other, and thus the State lost the ability to enhance the expired sentences, leaving only one remaining count's sentence capable of enhancement by the time his parole was revoked. We reject this view.

{18}      Defendant's November 2009 probation violation report contained the two allegations of dating someone with a minor child and battering that child. Defendant asserts that the condition to which he agreed under the sex offender behavioral contract was illegal in restricting his associations, and it therefore could not serve as a basis for the violation of probation or parole. We have already held that the condition that he receive prior permission before dating a person with custody of minor children was reasonable, permitted under the terms of the probation agreement, and pursuant to the standard conditions of his probation and parole. We note that Defendant's probation was not violated.[5]

---

[5]The request to violate his probation was withdrawn following his habitual offender sentencing.

13

**{19}** Defendant stated that he understood that he would be sentenced as an habitual offender if he violated the law before completing the sentence in this case. The terms of the plea agreement and the probation order that he signed were both specific as to his responsibilities, the latter specifying two years probation and parole to follow his incarceration. Therefore, we are not persuaded that Defendant's sentence as an habitual offender violated his reasonable expectation of finality in his sentence. Defendant does not contest the fact that his parole was revoked, which he was aware was the sole trigger for the imposition of habitual offender enhancements to his sentence pursuant to his plea agreement. Defendant also does not contest that, in his plea agreement, each of the remaining four counts were subject to one-year enhancement as an habitual offender. The district court accordingly enhanced Defendant's sentence by one year for each of the remaining felony convictions of which he had been adjudicated guilty. We agree with the district court.

**{20}** In holding that Defendant had no reasonable expectation that his sentence was final until his probation and parole had been completed, the district court relied on *State v. Villalobos*. 1998-NMSC-036, 126 N.M. 255, 968 P.2d 766. In *Villalobos*, the defendant executed a plea agreement, by which he received a suspended eighteen-month sentence and three years of probation. *Id.* ¶ 1. The defendant violated his probation after the eighteen-month sentence expired, but prior to the end of his probation. *Id.* ¶ 2. The plea agreement in that case provided that the state could bring

14

habitual offender proceedings during the term of the suspended sentence if probation was violated, and the defendant waived time limits. The district court dismissed the habitual enhancement proceedings on the defendant's motion that asserted his sentence was final after the eighteen months expired. Our Supreme Court reversed the dismissal, following *State v. Roybal*, 1995-NMCA-097, 120 N.M. 507, 903 P.2d 249, which held that a parolee is still a prisoner of the state and has no expectation of finality of his sentence when still on parole. *Villalobos*, 1998-NMSC-036, ¶ 7. The court in *Villalobos* extended that premise to a defendant on probation, pointing out that the seriousness of consequences for violating probation "are sufficient to defeat any expectation of finality and suffice as an affirmative basis for imposing an enhanced sentence." *Id.* ¶ 11. It further concluded that, because the defendant consciously agreed to a plea bargain, including the provision that, if he violated the terms of his suspended sentence, time limits were expressly waived for the filing of supplemental information, the defendant could not maintain "any expectation in the finality of his sentence." *Id.* ¶ 13.

{21}     Defendant does not argue that there was any ambiguity that his parole was to be served following his release from custody. *See* NMSA 1978, § 31-18-15(C) (2007) (requiring a sentencing court to include a two-year parole period "to be served . . . after the completion of any actual time of imprisonment"). He does not contest that his parole was revoked early. Under his plea agreement, the district court could have

15

imposed the habitual offender enhancements on the last day of his probation. We therefore affirm the district court.

**III.    CONCLUSION**

{22}    Observing no error in the district court's imposition of the habitual offender enhancements to Defendant's sentences, we affirm the district court.

{23}    **IT IS SO ORDERED.**


_____
**RODERICK T. KENNEDY, Chief Judge**


**WE CONCUR:**


_____
**M. MONICA ZAMORA, Judge**


_____
**J. MILES HANISEE, Judge**

16