157 P.3d 56 (2007)
2007-NMCA-043
STATE of New Mexico, Plaintiff-Appellee,
v.
Jovan T. EDWARDS, Defendant-Appellant.
No. 25,675.
Court of Appeals of New Mexico.
February 16, 2007.
Certiorari Granted April 2, 2007.
*59 Gary K. King, Attorney General, Margaret McLean, Assistant Attorney General Santa Fe, NM, for Appellee.
Gary C. Mitchell, P.C., Gary C. Mitchell Ruidoso, NM, for Appellant.
Certiorari Granted, No. 30,281, April 2, 2007.

OPINION
BUSTAMANTE, Judge.
{1} This case presents us with the issue of whether certain omissions by defense counsel in advising a criminal defendant to enter a plea of guilty or no contest amount to ineffective assistance of counsel. More specifically, the question before us is whether, in a sex crimes case, defense counsel's performance is deficient when he or she fails to advise the defendant that a plea of guilty or no contest will almost certainly result in the defendant having to register as a sex offender under the New Mexico Sex Offender Registration and Notification Act (SORNA), NMSA 1978, §§ 29-11A-1 to -10 (1995, as amended through 2005). We conclude that our Supreme Court's recent decision in State v. Paredez, 2004-NMSC-036, 136 N.M. 533, 101 P.3d 799, compels us to answer in the affirmative. Under such circumstances, the defendant does not enter the plea knowingly and voluntarily and, if the omission is prejudicial to the defendant, the district court must allow the defendant to withdraw the plea. Although we find that defense counsel's performance in the present case was deficient, the appellate record fails to show whether the deficient performance prejudiced Defendant. Accordingly, we remand to the district court for an evidentiary hearing on this issue.
BACKGROUND
{2} On February 28, 2003, Otero County prosecutors charged Defendant Jovan Edwards (Edwards) with the following criminal offenses arising from incidents involving five victims: (1) three counts of criminal sexual penetration (CSP); (2) one count of enticement of a child; (3) four counts of contributing to the delinquency of a minor; and (4) two counts of criminal sexual contact (CSC). Several days later, attorney Todd A. Holmes (Holmes) entered his appearance on behalf of Edwards. On April 28, 2003, Edwards waived arraignment and entered a plea of not guilty.
{3} Edwards later entered into a plea and disposition agreement in which he pled no contest to one count of CSP, four counts of contributing to the delinquency of a minor (including one amended count), and one count of CSC. The plea agreement recited that sentencing was in the discretion of the district court. Additionally, the plea agreement provided that five of the ten original counts against Edwards would be dismissed.
{4} The district court held a hearing on the change of plea on September 11, 2003. The court explained to Edwards the range of possible sentences Edwards might receive and that the sentences could run consecutively or concurrently. The court also explained that the sentences could be suspended or deferred. Edwards indicated that he understood the range of possible sentences he could receive as a result of his plea.
{5} The district court then asked Holmes if he was satisfied that there was a factual basis for Edwards' plea; Holmes answered affirmatively, and the court found that there was a sufficient factual basis for the plea. The court accepted Edwards' plea. Holmes indicated that he would be pursuing an order for Edwards to undergo a forensic sex offender evaluation. The court acknowledged Holmes' request and released Edwards.
{6} Edwards appeared for sentencing on February 16, 2004. Holmes asked the court to order Edwards to treatment in lieu of incarceration. In support of this request, Holmes pointed to, among other things, Edwards' *60 service in the military, volunteer work, family background, and lack of a prior criminal record. Holmes further acknowledged that Edwards knew he "did wrong" and that he had exercised "poor judgment." Edwards testified at the hearing and stated that he regretted his actions and took full responsibility for them. Holmes argued that Edwards should be given a conditional discharge so that he would not have to register as a sex offender. The district court was not persuaded and sentenced Edwards to five and one-half years imprisonment. The court based its decision on the number of victims and the extreme impact of Edwards' actions upon them.
{7} The district court entered its judgment on March 11, 2004. The judgment states that "[t]he Defendant shall comply with . . . [SORNA]." Edwards thereafter obtained new counsel, Gary C. Mitchell (Mitchell), who filed a motion to set aside the plea and alternative motion to reconsider sentence on May 25, 2004. As grounds for his motion to set aside the plea, Edwards alleged, inter alia, that he had "entered his plea with the understanding from his previous attorney [that] he would receive probation and a conditional discharge, thus requiring no reporting as a sexual [sic] offender." The district court held a hearing on Edwards' motion the following month.
{8} At the hearing, Edwards testified that Holmes never told him what it meant to have to register as a sex offender and that, at the time he pled no contest, he was not aware of the possibility that he might have to register. Edwards noted that the plea agreement made no mention of the registration requirement under SORNA. He further testified that Holmes led him to believe that he would only get probation and would not have to serve any time.
{9} In light of the foregoing facts, Mitchell argued that the plea agreement should have contained notice of the duty to register under SORNA and that Holmes had an obligation to advise Edwards that registration was a possible consequence of his plea. Mitchell further asserted that, given the direct and severe consequences of sex offender registration, Holmes' failure to advise Edwards prior to entry of his plea amounted to ineffective assistance of counsel. Mitchell maintained, therefore, that the plea should be set aside.
{10} The district court disagreed and refused to set aside Edwards' plea. However, the court expressed concern about whether Holmes actually promised Edwards that he would get a conditional discharge with probation. The court decided to hold another hearing in which Holmes could testify; if Holmes corroborated Edwards' version of events, the court would allow Edwards to withdraw his plea.
{11} The second hearing on the motion to withdraw the plea took place on February 9, 2005. At the hearing, Holmes testified that he told Edwards that Edwards was an excellent candidate for probation based on his background and lack of a prior criminal record. Holmes told Edwards that, in his opinion, Edwards would receive probation, but that the district court would ultimately decide the sentence. Holmes also stated that he had not discussed with Edwards the possibility of Edwards having to register as a sex offender, other than telling him that sex offender registration would not be required if Edwards received a conditional discharge. In sum, Holmes believed that he had convinced Edwards that he would get probation, even though Holmes had not guaranteed such a result.
{12} Mitchell reasserted his argument that Holmes' failure to advise Edwards about the registration requirements of SORNA amounted to ineffective assistance of counsel and requested that the plea be set aside or the sentence reconsidered. The State responded that this Court's decision in State v. Moore, 2004-NMCA-035, 135 N.M. 210, 86 P.3d 635, was controlling precedent and that, under Moore, no obligation exists to advise a defendant of the possibility or consequences of sex offender registration when entering the plea. The State also noted that Edwards could have received a worse sentence and that the sentence was proper in light of the multiple victims and offenses.
{13} Mitchell argued that the New Mexico Supreme Court issued its decision in Paredez subsequent to our decision in Moore, and *61 that Paredez was the controlling case. Mitchell maintained that Paredez stands for the proposition that defense counsel should advise a client of the collateral consequences of a plea and that the failure to explain sex offender registration was a violation of due process. Therefore, because Edwards was not properly informed of SORNA's registration requirement, Mitchell argued that Edwards' plea should be set aside.
{14} The district court denied the motion to set aside the plea, reasoning that Moore was the controlling precedent and that the court had no duty to advise Edwards of the notice and registration requirements of SORNA. The court found that, even assuming a defense attorney has a higher duty than the court to advise a defendant regarding SORNA, that duty was not violated in this case; Holmes "more than likely" advised Edwards of the sex offender registration requirement. The court also denied Edwards' motion to modify the sentence. The court entered its order denying the motions on February 21, 2005, and Edwards timely appealed.
{15} On appeal, Edwards challenges the trial court's denial of his motion to set aside his plea of no contest. Edwards does not allege that the trial court erred by denying his alternative motion to reconsider the sentence and has thus abandoned the issue. See Magnolia Mountain Ltd. P'ship v. Ski Rio Partners, Ltd., 2006-NMCA-027, ¶ 34, 139 N.M. 288, 131 P.3d 675 ("[A]n issue is abandoned on appeal if it is not raised in the brief in chief."). Therefore, the sole issue presented on appeal is whether Edwards received effective assistance of counsel prior to entering his plea of no contest and, consequently, whether the district court erred in denying Edwards' motion to set aside the plea.
DISCUSSION
Due Process Requires Defense Counsel to Render Effective Assistance During Plea Negotiations.
{16} We generally review a district court's denial of a motion to set aside a plea using an abuse of discretion standard. State v. Lozano, 1996-NMCA-075, ¶ 9, 122 N.M. 120, 921 P.2d 316. "The district court abuses its discretion in [this context] when the undisputed facts establish that the plea was not knowingly and voluntarily given." Paredez, 2004-NMSC-036, ¶ 5, 136 N.M. 533, 101 P.3d 799 (internal quotation marks and citation omitted). However, "the abuse-of-discretion standard does not preclude an appellate court from correcting errors premised on the trial court's misapprehension of the law[.]" State v. Barnett, 1998-NMCA-105, ¶ 13, 125 N.M. 739, 965 P.2d 323. Furthermore, whether a defendant must be advised of certain consequences of a plea as a matter of due process of law is a question of law that we review de novo. Moore, 2004-NMCA-035, ¶ 12, 135 N.M. 210, 86 P.3d 635.
{17} A criminal defendant waives several constitutional rights by entering a plea of guilty or no contest, including his or her right to a jury trial, right of confrontation, and privilege against self-incrimination. Paredez, 2004-NMSC-036, ¶ 7, 136 N.M. 533, 101 P.3d 799. Therefore, in order to comport with due process, "the paramount concern with respect to guilty pleas is that they be knowingly and voluntarily given." Vigil v. Fogerson, 2006-NMCA-010, ¶ 40, 138 N.M. 822, 126 P.3d 1186. In other words, "[t]he defendant must understand his guilty plea and its consequences." State v. Garcia, 121 N.M. 544, 547, 915 P.2d 300, 303 (1996).
{18} Rule 5-303 NMRA sets forth the procedures required for the district court to accept a plea of guilty, no contest or guilty but mentally ill. Rule 5-303(E). These procedures "are designed to ensure a guilty plea is made knowingly and voluntarily." Paredez, 2004-NMSC-036, ¶ 8, 136 N.M. 533, 101 P.3d 799 (internal quotation marks and citation omitted). However, "[t]he [district] court only has a duty to ensure that the defendant understands the `direct' consequences of the plea but is under no duty to advise the defendant of the plea's `collateral' consequences." Id. ¶ 9. We have previously held that "SORNA registration and notification consequences are collateral . . . consequences of a plea of guilty." Moore, 2004-NMCA-035, ¶ 25, 135 N.M. 210, 86 P.3d 635. Therefore, "a court's failure to advise a [defendant] of SORNA registration and notification requirements does not render a plea *62 involuntary or otherwise rise to the level of a . . . due process violation." Id.
{19} Nevertheless, even where the district court has no duty to inform a defendant of the collateral consequences of his plea, defense counsel may have such an obligation. See Paredez, 2004-NMSC-036, ¶¶ 12-13, 136 N.M. 533, 101 P.3d 799. Where a defendant enters his or her plea on advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Id. ¶ 13 (quoting Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (internal quotation marks omitted)). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill, 474 U.S. at 56, 106 S.Ct. 366 (internal quotation marks and citation omitted). "Effective assistance of counsel is necessary during plea negotiations because the most important decision for a defendant in a criminal case is generally whether to contest a charge or enter into a plea agreement." Patterson v. LeMaster, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032. A defendant may therefore challenge the voluntariness of his plea by asserting a claim of ineffective assistance of counsel. See Paredez, 2004-NMSC-036, ¶¶ 12-13, 136 N.M. 533, 101 P.3d 799.
{20} Claims of ineffective assistance of counsel premised on a defendant's alleged entry of an involuntary plea require analysis under the two-part test articulated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Paredez, 2004-NMSC-036, ¶ 13, 136 N.M. 533, 101 P.3d 799. "To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." Id. (internal quotation marks and citation omitted). Therefore, we first address whether Holmes' performance in the present case was deficient and, if so, whether the deficiency prejudiced Edwards.
1. Under Paredez, Defense Counsel's Performance Was Deficient.
{21} The test for deficient performance under Strickland "is whether the counsel's representation fell below an objective standard of reasonableness." Paredez, 2004-NMSC-036, ¶ 14, 136 N.M. 533, 101 P.3d 799 (internal quotation marks and citation omitted). We "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. (internal quotation marks and citations omitted). Moreover, "we do not second guess defense counsel's strategic decisions" when applying the deficient performance prong. Patterson, 2001-NMSC-013, ¶ 17, 130 N.M. 179, 21 P.3d 1032.
{22} In Paredez, our Supreme Court employed a Strickland analysis to determine whether the defense counsel's failure in that case to advise the defendant about the immigration consequences of a guilty plea amounted to ineffective assistance of counsel. Paredez, 2004-NMSC-036, ¶¶ 13-22, 136 N.M. 533, 101 P.3d 799. In addressing deficient performance, the Court noted that "an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is . . . objectively unreasonable." Id. ¶ 15 (quoting United States v. Couto, 311 F.3d 179, 188 (2d Cir.2002)). The Court also stated that, "when a defendant's guilty plea almost certainly will result in deportation, an attorney's advice to the client that he or she `could' or `might' be deported would be misleading and thus deficient." Id. The Court further held that "an attorney's non-advice to an alien defendant on the immigration consequences of a guilty plea would also be deficient performance." Id. ¶ 16.
{23} The defendant in Paredez was a permanent resident alien from Guatemala who pled guilty to criminal sexual contact of a minor in the third degree. Id. ¶¶ 1-2. Prior to entering his plea, defense counsel had advised him that the plea agreement "could" affect his immigration status. Id. ¶¶ 2, 16. On appeal, the Supreme Court construed the applicable federal immigration statutes and concluded that, if the defendant's guilty plea were to stand, his deportation would be "virtually automatic." Id. ¶ 4. The Court held *63 that criminal defense attorneys must advise their non-citizen clients of "the specific immigration consequences of pleading guilty, including whether deportation would be virtually certain." Id. ¶ 19. The Court concluded that the failure to provide such specific advice amounts to deficient performance under Strickland and constitutes ineffective assistance of counsel if the defendant suffers prejudice as a result. Paredez, 2004-NMSC-036, ¶¶ 15, 19, 136 N.M. 533, 101 P.3d 799. However, because the Court was neither able to determine from the appellate record whether defense counsel failed to adequately advise the defendant of the immigration consequences of his plea, nor whether the defendant would have changed his plea had he received the proper advice, the Court remanded the case to the district court for an evidentiary hearing on these issues. Id. ¶¶ 21, 24.
{24} In the present case, the State argues that Moore is controlling precedent and that we should not follow the holding in Paredez because it is limited to the immigration context. We disagree. As mentioned previously, the central holding in Moore is that "a court's failure to advise a convicted sex offender of SORNA registration and notification requirements does not render a plea involuntary or otherwise rise to the level of a constitutional due process violation." 2004-NMCA-035, ¶ 25, 135 N.M. 210, 86 P.3d 635. Our decision in Moore says nothing about the duties of defense counsel in this context; the defendant in that case did not assert ineffective assistance of counsel as grounds for reversal. Id. ¶ 6 n. 2. Likewise, the State's reliance on State v. Brothers, 2002-NMCA-110, 133 N.M. 36, 59 P.3d 1268, is misplaced because the defendant in that case did not seek to withdraw his plea, attack its voluntariness, or allege that he received ineffective assistance of counsel. Id. ¶ 29.
{25} Paredez, in contrast, is squarely on point for two reasons. First, the Court in Paredez acknowledged that, although the federal circuits consider deportation a "collateral" consequence of pleading guilty, 2004-NMSC-036, ¶ 9, 136 N.M. 533, 101 P.3d 799, deportation "can often be the harshest consequence of a non-citizen criminal defendant's guilty plea." 2004-NMSC-036, ¶ 18, 136 N.M. 533, 101 P.3d 799. We have similarly stated that "the combination of registration and notification [under SORNA] can have harsh consequences on sex offenders." State v. Druktenis, 2004-NMCA-032, ¶ 32, 135 N.M. 223, 86 P.3d 1050. Among the consequences of sex offender registration are "employability problems, harassment, stigma[,] ostracism, humiliation, and physical harm." Id. ¶ 33. We recognized as much in Moore when we stated that, for a sex offender, "the consequences of a plea are quite serious. . . . [W]e think there is little question that adequate pre-plea knowledge of the SORNA registration and notification consequences of a plea ought to be a part of criminal procedure." 2004-NMCA-035, ¶ 26, 135 N.M. 210, 86 P.3d 635.
{26} In light of the potential severity of collateral immigration consequences on non-citizen defendants, the Court in Paredez stated that "defense counsel should determine and advise the defendant, sufficiently in advance of the entry of any plea, as to the possible collateral consequences that might ensue from entry of the contemplated plea." 2004-NMSC-036, ¶ 18, 136 N.M. 533, 101 P.3d 799 (quoting ABA Standards for Criminal Justice: Guilty Pleas § 14-3.2 cmt., at 127 (3d ed.1999) (internal quotation marks omitted)). The State does not point to, nor are we able to find, any language in Paredez limiting its holding to the immigration context. We see no reason why the similarly harsh consequences of sex offender registration should not also necessitate specific advice from counsel so that defendants can make informed decisions regarding their pleas.
{27} This brings us to the second reason why Paredez is instructive in the present case; the harsh collateral consequence of sex offender registration  like deportation in some circumstances  is virtually certain to result from a plea of guilty or no contest to charges that trigger SORNA. The Court in Paredez emphasized that, where deportation would be a "virtually certain" result, "an attorney's advice to the client that he or she `could' or `might' be deported would be misleading and thus deficient." 2004-NMSC-036, *64 ¶¶ 15, 19, 136 N.M. 533, 101 P.3d 799. The Court further held that, "[i]f a client is a non-citizen, the attorney must advise that client of the specific immigration consequences of pleading guilty, including whether deportation would be virtually certain." Id. ¶ 19. The Court thus concluded that defense counsel in that case "had an affirmative duty to determine [the defendant's] immigration status and advise him that he almost certainly would be deported if he pleaded guilty to criminal sexual contact of a minor." Id. ¶ 25. Such advice, the Court reasoned, "will allow the defendant to make a knowing and voluntary decision to plead guilty." Id. ¶ 19.
{28} The same is true in the present context. The registration and notification provisions of SORNA are "immediate and automatic." Moore, 2004-NMCA-035, ¶ 24, 135 N.M. 210, 86 P.3d 635. "The duty to register [under SORNA] arises by legislative mandate, not by court order." Brothers, 2002-NMCA-110, ¶ 22, 133 N.M. 36, 59 P.3d 1268. Thus, the district court neither imposes SORNA provisions, nor does it have discretion to modify them in accepting a plea. Moore, 2004-NMCA-035, ¶ 24, 135 N.M. 210, 86 P.3d 635; cf. State v. Williams, 2006-NMCA-092, ¶¶ 12-13, 140 N.M. 194, 141 P.3d 538 (holding that district court did not have authority to impose registration requirements of SORNA as probation condition on defendant who was not convicted of a sex offense). Therefore, if a defendant pleads guilty or no contest to a sex offense and a conviction follows, without exception the law requires the defendant to register under SORNA.
{29} Furthermore, although we recently expressed reservations about the difficulty of the requirement in Paredez that defense counsel give specific advice based on the often complicated realm of federal immigration law, see State v. Carlos, 2006-NMCA-141, ¶¶ 26-27, 140 N.M. 688, 147 P.3d 897 (Vigil, J., specially concurring), we have no such concerns with respect to SORNA. In finding that the defendant in Paredez was facing almost certain deportation, the Supreme Court surveyed the applicable federal immigration statutes, including 8 U.S.C. § 1227(a) and (a)(2)(A)(iii) (2000), § 1101(a)(43)(A) (2000), and § 1229b(a)(3) (2000), to determine that the defendant was in the statutorily defined class of deportable aliens and was not eligible for discretionary relief from deportation. Paredez, 2004-NMSC-036, ¶ 4, 136 N.M. 533, 101 P.3d 799. The facts in Paredez provide just one example of how an attorney might consult federal immigration law in order to advise a non-citizen defendant regarding a plea; it is not difficult to imagine far more complex factual scenarios requiring a nuanced understanding of immigration law in order to comport with the rule in Paredez.
{30} In contrast, the task of figuring out whether a defendant's plea will expose him or her to SORNA's registration requirements is far less complicated. SORNA provides that a sex offender residing in New Mexico, or is a resident of another state but who works or attends school in New Mexico, must register with the county sheriff for the county in which the sex offender resides, works or attends school. See §§ 29-11A-4(A), (C). The statute defines a "sex offender" as one who is convicted of a sex offense and who, with rare exception, lives, works or studies in New Mexico. See § 29-11A-3(D); see also Brothers, 2002-NMCA-110, ¶¶ 12-15, 133 N.M. 36, 59 P.3d 1268 (holding that the phrase "is convicted" neither limits the registration requirements of SORNA to persons with current convictions for sex offenses, nor excludes persons who have completed deferred sentences for sex offenses). Therefore, the critical question for defense counsel in advising a defendant regarding a plea of guilty or no contest is whether the charges against the defendant fall within the category of "sex offenses" as defined by SORNA. Section 29-11A-3(E) sets forth twelve offenses that qualify as "sex offenses." Defense counsel need only consult this list to determine whether the defendant's plea will expose him or her to the virtually certain consequence of sex offender registration.
{31} In light of the harsh and virtually certain consequences under SORNA that flow from a plea of guilty or no contest to a sex offense, we follow Paredez and conclude that defense counsel has an affirmative duty to advise a defendant charged with a sex *65 offense that a plea of guilty or no contest will almost certainly subject the defendant to the registration requirements of SORNA. Proper advice will also include a discussion regarding what SORNA registration will mean, both in terms of the specific registration and notification provisions set forth in Sections 29-11A-4, -4.1, -5, -5.1, and -7, as well as the likely social consequences of being a registered sex offender. This is the minimum advice a defendant needs before deciding to waive his or her constitutional rights by entering into a plea agreement. Failure to so advise the defendant amounts to deficient performance under the Strickland test.
{32} In the present case, it appears from all accounts that Holmes did not advise Edwards that sex offender registration was a virtually certain consequence of his plea. To the contrary, Holmes downplayed the possibility of sex offender registration by convincing Edwards that he would likely get a conditional discharge and therefore would not have to register as a sex offender. However, even if that were true, it would have been only half of the story. What Holmes should have told Edwards was that, if Edwards did not receive a conditional discharge, his plea of no contest to sex offenses would automatically subject him to the registration requirements of SORNA. Although Holmes did warn Edwards that sentencing would be in the district court's discretion, this statement was equivalent to saying that Edwards "could" or "might" have to register and was thus insufficient under the standard set forth in Paredez. 2004-NMSC-036, ¶ 15, 136 N.M. 533, 101 P.3d 799. In sum, Edwards was entitled to know about the collateral consequences of a plea of guilty or no contest to a sex offense in New Mexico prior to entering into the plea agreement. We therefore hold that Holmes' performance in advising Edwards to enter a plea of no contest was deficient under the Strickland test.
{33} However, our inquiry does not end there. We now turn to the second prong of the Strickland test and determine whether Holmes' omission resulted in prejudice to Edwards. If so, the omission constitutes ineffective assistance of counsel and requires that the district court allow Edwards to withdraw his plea and proceed to trial.
2. Prejudice in the Plea Bargain Context
{34} Once a defendant has established that his counsel's performance in the plea bargain context was objectively unreasonable, the defendant must also show that, "but for counsel's errors, [the defendant] would not have pleaded guilty and instead gone to trial." Patterson, 2001-NMSC-013, ¶ 18, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted); Paredez, 2004-NMSC-036, ¶ 20, 136 N.M. 533, 101 P.3d 799 ("[T]he inquiry is whether counsel's constitutionally ineffective performance affected the outcome of the plea process." (internal quotation marks and citation omitted)). Our Supreme Court has noted that "[a] defendant who was convicted on a plea is not required to prove that a trial would have resulted in acquittal." Patterson, 2001-NMSC-013, ¶ 18, 130 N.M. 179, 21 P.3d 1032. Rather, "[t]he question is whether there is a reasonable probability that the defendant would have gone to trial instead of pleading guilty or no contest had counsel not acted unreasonably." Id. (internal quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (internal quotation marks and citation omitted). Therefore, the question in the present case is whether there is a reasonable probability that Edwards would have elected to go to trial had Holmes adequately advised him of SORNA's registration requirements.
{35} Our Supreme Court has stated that a defendant seeking to establish that there is a reasonable probability that he or she would have gone to trial generally must introduce evidence beyond self-serving statements. Id. ¶ 29. Such evidence may include pre-conviction statements or actions indicating the defendant's preference to plead or to go to trial. Id. ¶ 30. Furthermore, courts can look to the strength of the evidence against the defendant in determining whether there is a reasonable probability that the defendant would have elected to go to trial because "the evidence against a defendant informs his or her decision about *66 whether to challenge the charges at trial." Id. ¶ 31. "There is a direct relationship between the strength of the case against a defendant and the likelihood that he or she will plead guilty or no contest." Id.
{36} Nevertheless, we note that the Court in Patterson did not limit the types of additional evidence a defendant may provide in order to establish what he or she would have done given the appropriate advice prior to entering a plea. See id. ¶ 29 ("We have identified two types of additional evidence that are pertinent to the analysis in this case.") (emphasis added). Moreover, we have previously held that, "[i]n this context, there are no mechanical rules for determining prejudice." Barnett, 1998-NMCA-105, ¶ 32, 125 N.M. 739, 965 P.2d 323. Instead, "the focus is on whether there has been such a breakdown in the adversarial process as to undermine the fundamental fairness of the proceeding whose result is being challenged." Id.
{37} In the present case, the appellate record reveals little about what Edwards would have done had he received the appropriate advice regarding the SORNA registration requirements. Edwards certainly admitted to the acts for which he was convicted, stating that he took "full responsibility" for them. However, such will often be the case following a plea of guilty or no contest as defendants try to persuade the district court to show leniency in sentencing. The appellate record does not disclose much about the strength of the State's evidence against Edwards, nor whether Edwards said or did anything indicating his preference to go to trial prior to entering into the plea agreement.
{38} We also find it significant that Holmes based his advice regarding the plea on his sense that Edwards was a strong candidate for a conditional discharge and that he downplayed the possibility that Edwards would have to register as a sex offender. Although he did not guarantee Edwards a conditional discharge, Holmes certainly focused Edwards' attention on it as a likely outcome of the plea process. We think that the combination of Holmes' focus on a conditional discharge with his failure to adequately advise Edwards regarding SORNA created a substantial likelihood of prejudice in this case. However, we are not prepared to make that determination based on the record before us. Accordingly, we remand to the district court to hold an evidentiary hearing to determine if Holmes' deficient performance prejudiced Edwards. See id. ¶ 33.
CONCLUSION
{39} For the foregoing reasons, we reverse the district court's denial of Edwards' motion to set aside his plea and remand for further proceedings consistent with this opinion.
{40} IT IS SO ORDERED.
WE CONCUR: IRA ROBINSON and RODERICK T. KENNEDY, Judges.