This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                    **NO. 31,116**

**JESUS GONZALES,,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Drew D. Tatum, District Judge**

Gary K. King, Attorney General
William Lazar, Assistant Attorney General
Santa Fe, NM

for Appellant

Albert J. Costales
Truth or Consequences, NM

for Appellee

**MEMORANDUM OPINION**

**FRY, Judge.**

The State of New Mexico appeals the district court's grant of Defendant Jesus

Gonzales's motion to vacate his plea of no contest to child abuse. Defendant titled his

request for relief a "Petition for Writ of Coram Nobis, or in the Alternative a Rule [1-

060(B) NMRA] Motion to Set Aside a Void Judgment." "Because the common law writ of coram nobis was abolished and subsumed into Rule 1-060," we address the request under Rule 1-060(B). *State v. Barraza*, 2011-NMCA-111, ¶ 4, ___ N.M. ___, 267 P.3d 815; *see State v. Tran*, 2009-NMCA-010, ¶ 16, 145 N.M. 487, 200 P.3d 537.

On September 3, 2008, Defendant pleaded no contest to child abuse in violation of NMSA 1978, Section 30-6-1(D) (2005) (amended 2009), a third degree felony. Conviction for this offense makes it virtually certain that Defendant, who is not a United States citizen, will be deported to Mexico. Under *State v. Paredez*, 2004-NMSC-036, ¶ 25, 136 N.M. 533, 101 P.3d 799, Defendant's counsel was obligated to advise him of the specific consequences his plea would have on his immigration status. The parties do not dispute that Defendant's counsel failed to meet this requirement, having advised him only that he faced possible deportation. Defendant argues that he received ineffective assistance of counsel in agreeing to enter the plea and should therefore be allowed to withdraw it. The district court agreed, and the State appeals.

In considering claims of ineffective assistance, we apply the two-pronged *Strickland* test. "'A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the

defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense.'" *Lytle v. Jordan*, 2001-NMSC-016, ¶ 25, 130 N.M. 198, 22 P.3d 666 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's failure to advise Defendant of the specific consequences to his immigration status satisfies the deficient performance prong of the ineffective assistance analysis. *Paredez*, 2004-NMSC-036, ¶ 19. Thus, we need only address the second prong of *Strickland*.

"[T]he prejudice prong of the test is different for defendants convicted at trial than for defendants whose convictions rest on pleas." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 18, 130 N.M. 179, 21 P.3d 1032. "[I]n the plea bargain context a defendant must establish that his counsel's performance was objectively unreasonable and that but for counsel's errors, he would not have pleaded guilty and instead gone to trial." *Id.* (internal quotation marks and citation omitted). "A defendant who was convicted on a plea is not required to prove that a trial would have resulted in acquittal. The question is whether there is a reasonable probability that the defendant would have gone to trial instead of pleading guilty or no contest had counsel not acted unreasonably." *Id.* (internal quotation marks and citation omitted). "[A] defendant seeking to establish that there is a reasonable probability that he or she would have gone to trial generally must introduce evidence beyond self-serving

statements." *State v. Edwards*, 2007-NMCA-043, ¶ 35, 141 N.M. 491, 157 P.3d 56. "Such evidence may include pre-conviction statements or actions indicating the defendant's preference to plead or to go to trial." *Id.* "[C]ourts can look to the strength of the evidence against the defendant in determining whether there is a reasonable probability that the defendant would have elected to go to trial because the evidence against a defendant informs his or her decision about whether to challenge the charges at trial." *Id.* (internal quotation marks and citation omitted). "There is a direct relationship between the strength of the case against a defendant and the likelihood that he or she will plead guilty or no contest." *Id.* (internal quotation marks and citation omitted).

In its decision letter following the hearing on Defendant's Rule 1-060(B) motion, the district court found that Defendant had presented evidence that he would not have entered the plea agreement had he known he would be deported. The decision letter did not identify the specific evidence the district court was relying on, stating only, "The evidence presented by . . . Defendant to prove he would not have entered into this plea agreement if he had not relied upon the advice of his attorney [has] merit." Our own review of the record, however, reveals that the district court had evidence before it to support its decision in addition to Defendant's testimony at the plea withdrawal hearing.

We first recognize, as our Supreme Court did in *Paredez*, that "[d]eportation can often be the harshest consequence of a non-citizen criminal defendant's guilty plea, so that in many misdemeanor and low-level felony cases . . . [he or she] is usually much more concerned about immigration consequences than about the term of imprisonment." *Id.* ¶ 18 (alteration in original) (internal quotation marks and citation omitted). Defendant's circumstances in the present case suggest that deportation would be a harsh outcome for him because he had left Mexico as a child and legally lived in the United States for almost fifteen years; his mother, brother, and wife–whose five children he was helping her raise–live in the United States; he owned a house and vehicles with his wife; and he had no life in Mexico.

At the time Defendant entered his no contest plea and for some time thereafter, the parties appear to have believed that if Defendant were granted a conditional discharge for the offense, that outcome would not have counted as a conviction for purposes of federal immigration law, and Defendant would not be deported. In his closing argument at the sentencing hearing, for example, defense counsel argued for a conditional discharge in order to avoid a felony conviction that would lead to deportation and thus break up Defendant's family. However, as the State realized after filing its brief in chief in the present appeal, if a defendant admits sufficient facts

to warrant a finding of guilt, it counts as a conviction for immigration purposes even if the trial court withholds an adjudication of guilt.[1]

In deciding how to plead, Defendant was confronted with two possible negative outcomes: incarceration and deportation. Under the terms of the plea agreement, the no contest plea could result in a conditional discharge, which Defendant and the parties believed would mean no incarceration and no deportation. The other possibility under the no contest plea was conviction, which would mean—as Defendant was incorrectly told—possible deportation and possible incarceration. If instead Defendant had gone to trial, he might be found not guilty and thus faced neither deportation nor incarceration. If he were found guilty, he faced—he was incorrectly told—possible deportation and likely longer incarceration than if he were convicted under a no-contest plea. Thus, Defendant was incorrectly advised on two levels: he was told that deportation was possible rather than virtually certain, and he was told that a conditional discharge would not count as a conviction under immigration law. As Defendant understood his options, the best outcome was the no contest plea because the worst-case scenario there likely meant less incarceration than

---

[1]8 U.S.C. 1101(a)(48)(A) (2010): "The term 'conviction' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere[,] or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed."

if he were found guilty after trial. As discussed above, the reality of his choices was quite different: the no contest plea would result in virtually certain deportation. Stated another way, given the reality of his choices as opposed to what he was told, not only was there a "reasonable probability" that he would have elected to go to trial, it simply made no sense for him to enter the no contest plea. *Edwards*, 2007-NMCA-043, ¶ 35.

Finally, although there was graphic evidence against Defendant in the form of photographs of the victim's bruises, if Defendant had correctly understood his options, he had at least some incentive to take his chances at trial because a jury might have accepted his argument that he believed he was defending his mother from the victim.

**CONCLUSION**

We conclude that but for the incorrect advice Defendant's counsel provided, there was a reasonable probability that Defendant would have elected to go to trial, and he thus incurred prejudice under the second prong of *Strickland*.

For the reasons stated above, we affirm the district court and remand for further proceedings consistent with this Opinion.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**LINDA M. VANZI, Judge**