IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2016-NMSC-030

Filing Date: August 4, 2016

Docket No. S-1-SC-34826

STATE OF NEW MEXICO,

        Plaintiff-Petitioner,

v.

LUCAS TRAMMELL,

        Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Denise Barela-Shepherd, District Judge**

Hector H. Balderas, Attorney General
Yvonne Marie Chicoine, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Respondent

## OPINION

**VIGIL, Justice.**

**{1}**    In 2004 Lucas Trammell (Defendant) pled guilty, in part, to false imprisonment of a minor victim. At the time, a conviction of false imprisonment of a minor victim required that Defendant register as a sex offender under the New Mexico Sex Offender Registration and Notification Act (SORNA), NMSA 1978, §§ 29-11A-1 to -10 (1995, as amended through 2000). Defendant's attorney failed to realize that Defendant's plea included a sex offense requiring SORNA registration. Defendant moved to withdraw his plea six years later, after he was arrested and found to have violated the terms of his probation. We

1

conclude that although counsel's failure to advise Defendant of the SORNA registration requirement in his plea agreement was per se deficient performance under the first prong of the *Strickland* test for ineffective assistance of counsel, Defendant failed to show that under *Strickland*'s second prong he had been prejudiced by that deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

## I.      BACKGROUND

{2}      On March 31, 2004, pursuant to a plea agreement, Defendant was convicted of several crimes, including false imprisonment of a minor. Defendant's conviction followed a March 15, 2002, incident whereby Defendant stole a truck, unaware that there was a twelve-year-old boy in the back seat. Upon realizing that the child was in the vehicle, Defendant returned the child unharmed to the vehicle's original location.

{3}      On July 1, 2004, the district court sentenced Defendant to a total of eleven years and six months in prison and suspended two of those years, resulting in a prison term of nine years and six months. Defendant's prison term was to be followed by two years of probation and parole. The district court issued its judgment, sentence, and partial suspension order by standard court form, filling in the blanks in accordance with the facts and circumstances of Defendant's case. Notably, on the page listing potential probation conditions, the district court did not check the box next to the language "Defendant Shall Register as a Sex Offender pursuant to section NMSA 1978, § 29-11A-1, *et seq*., as amended." Further, the order provided that "upon release from D.O.C. . . . . Defendant must successfully complete [a] residential substance abuse program including either Fort Stanton or Delancey Street. This will be followed by standard supervised probation. Complete STEPS program."

{4}      Defendant completed his prison sentence on May 26, 2008, and was released to complete his probation and parole. Prior to his release, though, Defendant had met with a case worker to discuss his probation conditions and was informed that as a result of his conviction for false imprisonment of a minor victim he would be subject to sex offender probation requiring SORNA registration. *See* NMSA 1978, § 29-11A-3(B)(7) (2000) (providing that " 'sex offense' means: . . . (7) false imprisonment . . . when the victim is less than eighteen years of age and the offender is not a parent of the victim"). Although he was surprised to learn that he was subject to sex offender probation, Defendant complied with the registration requirement because he was eager to be released. As a sex offender, one condition of his release was that he could "not date or marry anyone who has custody of minor children without *prior permission* from [his] Probation/Parole Officer."

{5}      After his release, on November 6, 2009, Defendant was arrested on child abuse charges for the battery of his girlfriend's fourteen-year-old son. Because Defendant failed to seek permission from his probation officer prior to dating the victim's mother, he had violated the terms of his supervision—so the State filed a motion to revoke probation. Additionally, now that Defendant had violated the terms of his supervision, the State sought to impose the four years of habitual offender time it had agreed not to pursue under the

2

original plea agreement.

**{6}**     Defendant, by new counsel, then filed a motion for modification of his probation terms and conditions requesting that the district court issue an order "immediately suspending his supervision by the Sex Offender Probation Unit (SUP) and placing him on standard probation with all the standard terms and conditions as ordered at initial sentencing." Defendant contended that he "was not ordered onto sex offender probation by [the district] court as part of his sentence," but rather "was specifically ordered . . . to be supervised under the standard terms of probation." Further, Defendant argued that pursuant to NMSA 1978, Section 31-20-5.2(A) (2003), "*prior to* placing a sex offender on probation, the court must conduct a hearing to determine the terms and conditions of probation," and no such hearing was conducted in his case. *See id.*

**{7}**     Defendant then filed a motion to withdraw his plea on April 9, 2010. Defendant argued that because "he was not advised . . . that he was pleading guilty to a sex offense . . ., his guilty plea was . . . not entered knowingly and voluntarily." Defendant thus argued that his plea counsel was ineffective by failing to advise him that SORNA registration was a collateral consequence of his plea, relying heavily on the Court of Appeals' opinion in *State v. Edwards*, 2007-NMCA-043, 141 N.M. 491, 157 P.3d 56, *cert. quashed*, 2007-NMCERT-008 (Aug. 3, 2007). In *Edwards*, the Court of Appeals held that a defense attorney's failure to advise a client in a criminal case of the SORNA registration consequences of a guilty plea amounted to deficient performance under the first prong of the *Strickland* test for ineffective assistance of counsel. *Edwards*, 2007-NMCA-043, ¶ 32. Defendant further argued that he was prejudiced by his attorney's deficient performance because "had he been adequately advised, he would have rejected the plea and disposition agreement as it was," and instead would have negotiated a plea that did not subject him to sex offender registration. Both Defendant's original plea attorney and his attorney in the probation revocation proceedings believed that if defense counsel and the prosecutor had realized this plea included a sex offense there likely would have been a different plea agreement.

**{8}**     The district court held a hearing on the motion to withdraw the plea on April 16, 2010. Then, on May 19, 2010, the district court found that Defendant was a habitual offender and ordered him to serve an additional four years of imprisonment. The district court did not rule on the motion to withdraw Defendant's original plea until October 29, 2010, when it denied the motion, concluding that there had not been ineffective assistance of counsel because the Court of Appeals opinion upon which Defendant relied was not retroactively applicable to Defendant's case and Defendant had not met his burden of showing he had been prejudiced by his counsel's conduct.

**{9}**     Defendant appealed the denial of his motion to withdraw his plea to the Court of Appeals. *See State v. Trammell*, 2014-NMCA-107, ¶ 5, 336 P.3d 977. The Court of Appeals reversed the district court, holding that its opinion in *Edwards* did not announce a new rule, so it applied retroactively. *Trammell*, 2014-NMCA-107, ¶ 2. Therefore, Defendant's attorney's failure to advise him that he would be subject to SORNA registration as a result

3

of his plea constituted deficient performance by counsel. *Id.*

**{10}** The Court of Appeals' determination that *Edwards* did not announce a new rule was "based partly on the fact that a line on Defendant's judgment and sentence paperwork called into question possible SORNA registration." *Trammell*, 2014-NMCA-107, ¶¶ 12, 14. The Court of Appeals went on to conclude that "[t]he affirmative obligation of defense counsel to be aware of collateral consequences of a plea is well established." *Id.* ¶ 15. Additionally, case law at the time Defendant entered his plea provided that " 'there is little question that adequate pre-plea knowledge of the SORNA registration and notification consequences of a plea ought to be a part of criminal procedure.' " *Id.* (quoting *State v. Moore*, 2004-NMCA-035, ¶ 26, 135 N.M. 210, 86 P.3d 635). Combined with testimony by Defendant's attorney that it was "standard practice to advise a client that he was pleading guilty to a sex offense and that he had failed to realize that Defendant's offense was considered a sex offense," the Court of Appeals determined that these factors demonstrated that Defendant's attorney had failed to meet his obligation under *Edwards*, which applied retroactively to Defendant's case. *Trammell*, 2014-NMCA-107, ¶ 15.

**{11}** The Court of Appeals then considered whether Defendant had been prejudiced by his attorney's failure to advise him of the SORNA registration requirements under *Strickland*'s second prong. *See Trammell*, 2014-NMCA-107, ¶¶ 16-18. The Court of Appeals noted that in order to show prejudice, Defendant would have been required to "show that there was a reasonable probability that he would have rejected the plea and proceeded to trial if he had been informed of the SORNA consequences." *Id.* ¶ 16. "However," the Court of Appeals added, "these rules are not mechanical, and we may consider other factors, so long as the focus is on whether there has been such a breakdown in the adversarial process as to undermine the fundamental fairness of the proceeding whose result is being challenged." *Id.* (internal quotation marks and citation omitted). The Court of Appeals concluded that (1) "we consider SORNA registration, like immigration consequences, a harsh result of Defendant's plea," *id.* ¶ 17; (2) Defendant testified that he would not have accepted the plea had he known it was considered a sex offense, *id.* ¶ 18; and (3) Defendant's plea counsel testified that he did not believe that either he or the prosecutor recognized that the plea included a sex offense, *id.* Thus, the Court of Appeals concluded that SORNA registration "prejudiced Defendant to the extent that it constituted a breakdown in the fundamental fairness of the proceedings." *Id.*

**{12}** Accordingly, the Court of Appeals remanded the case to the district court with instructions to allow Defendant to withdraw his plea. *Id.* ¶ 19. The State filed a petition for a writ of certiorari from this Court, which we granted. 2014-NMCERT-010. While we agree with the Court of Appeals' conclusion that the rule from *Edwards* retroactively applied to Defendant's situation because *Edwards* did not announce a new rule, we disagree with the Court of Appeals' conclusion that Defendant was prejudiced by his counsel's failure to advise him of the plea agreement's SORNA registration requirement. We thus reverse the Court of Appeals and remand to the district court for reentry of its order denying Defendant's motion to withdraw his guilty plea as premised on ineffective assistance of

4

counsel in accordance with this opinion.[1]

## II.    STANDARD OF REVIEW

**{13}**    "A motion to withdraw a guilty plea is addressed to the sound discretion of the [district] court, and we review the [district] court's denial of such motion only for abuse of discretion." *State v. Paredez*, 2004-NMSC-036, ¶ 5, 136 N.M. 533, 101 P.3d 799 (internal quotation marks and citation omitted). "We review the retroactive application of a judicial opinion de novo." *Ramirez v. State* (*Ramirez II*), 2014-NMSC-023, ¶ 9, 333 P.3d 240 (citing *Kersey v. Hatch*, 2010-NMSC-020, ¶ 14, 148 N.M. 381, 237 P.3d 683).

## III.    DISCUSSION

**{14}**    Before challenging Defendant's claim that he received ineffective assistance of counsel, the State first argues that both the district court and the Court of Appeals lacked jurisdiction to consider and review Defendant's case. We address this issue at the outset, and determine that this controversy is properly before our Court. The State then argues that the Court of Appeals erred in allowing Defendant to withdraw his plea because there was no ineffective assistance of counsel. The State contends that *Edwards* does not apply retroactively, and, therefore, Defendant's plea counsel's performance was not deficient under the law at that time. Further, the State argues that Defendant did not demonstrate prejudice, as required under *Strickland*. We disagree with the State, in part, and hold that the logic of *Edwards* applies retroactively because it did not announce a new rule of law. Yet, we also conclude that Defendant did not adequately show that he had been prejudiced by his counsel's deficient advice in the course of accepting the instant plea agreement.

### A.    Jurisdiction

**{15}**    The State argues that both the district court and the Court of Appeals lacked jurisdiction with respect to Defendant's motion to withdraw his guilty plea. Yet, the State also concedes that Defendant's motion to withdraw his plea might have been properly treated by the district court as a petition for habeas corpus relief under Rule 5-802 NMRA. Thus, when the district court denied Defendant's motion, his appeal from the disposition should have been to the Supreme Court in accordance with Rule 5-802. *See Cummings v. State*, 2007-NMSC-048, ¶ 9, 142 N.M. 656, 168 P.3d 1080. Still, the error is of no moment to our review of the underlying issues in this case as the proper remedy for the error is transfer to the Supreme Court from the Court of Appeals. *See Martinez v. Chavez*, 2008-NMSC-021, ¶ 14, 144 N.M. 1, 183 P.3d 145 (per curiam) (considering a case that was transferred in error to the Supreme Court because it was not incorrectly considered to be an appeal from a habeas corpus proceeding, and providing that "we recognize the difficult task that the Court

---

[1]Defendant served all four years of his habitual offender sentence and was released on December 17, 2012.

of Appeals often faces when confronted with a case filed as a direct appeal from post-conviction proceedings that may or may not be properly construed as a habeas corpus proceeding"). Accordingly, we now consider whether Defendant's Sixth Amendment right to effective assistance of counsel was violated by entry of the instant plea agreement.

**B.      Ineffective Assistance of Counsel**

**{16}**     "The Sixth Amendment to the United States Constitution . . . guarantees not only the right to counsel but the right to the effective assistance of counsel." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted). In order to be entitled to relief on the basis of ineffective assistance of counsel, a defendant must show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. In *Edwards*, 2007-NMCA-043, ¶¶ 31-32, the Court of Appeals held that defense counsel's failure to advise a defendant that pleading guilty or no contest to a sex offense would require that the defendant register as a sex offender under SORNA amounted to deficient performance under the first prong of the *Strickland* ineffective assistance of counsel test. Although the *Edwards* Court was unable to make a determination on the issue of prejudice in that case, it recognized that the standard for assessing prejudice required a defendant to show that "but for counsel's errors, [the defendant] would not have pleaded guilty and instead gone to trial." 2007-NMCA-043, ¶ 34 (alteration in original) (quoting *Patterson*, 2001-NMSC-013, ¶ 18). Thus, under *Edwards*, defense counsel's failure to advise Defendant of the instant plea agreement's SORNA registration requirement was per se deficient performance of counsel under *Strickland*'s first prong. Yet, *Edwards* predated Defendant's plea agreement, so we must first determine whether *Edwards* embodied a novel pronouncement or instead relied on preexisting law.

**i.      Defense Counsel's Failure to Advise Defendant of Sex Offender Registration Requirements Pursuant to Plea Agreement Was Per Se Deficient Performance Under *Strickland*'s First Prong**

**{17}**     The State's primary argument in this case arises from what it claims was a novel pronouncement in 2007 by the Court of Appeals in *Edwards* holding that defense counsel's failure to advise a defendant entering into a plea agreement of said agreement's SORNA registration requirement constitutes deficient performance of counsel. Accordingly, the State argues that *Edwards* should not apply retroactively to Defendant's 2004 plea agreement. We analyze the retroactivity of novel criminal laws in accordance with *Teague v. Lane*, 489 U.S. 288, 310 (1989). " 'If it is an old rule, it applies both on direct and collateral review. If it is a new rule, it generally applies only to cases that are still on direct review.' " *State v. Ramirez* (*Ramirez I*), 2012-NMCA-057, ¶ 6, 278 P.3d 569 (quoting *State v. Frawley*, 2007-NMSC-057, ¶ 34, 143 N.M. 7, 172 P.3d 144), *aff'd Ramirez II*, 2014-NMSC-023. New rules "break[] new ground or impos[e] a new obligation on the [s]tates," meaning that "the result [of the case] was not dictated by precedent existing at the time the defendant's conviction became final." *Ramirez I*, 2012-NMCA-057, ¶¶ 7 (third alteration in original) (internal

6

quotation marks and citation omitted). We conclude that *Edwards* did not make a novel pronouncement of law and that the duty to advise clients of SORNA registration requirements was a prerequisite to effective performance of counsel that existed prior to that case's publication.

**{18}** *Edwards* relied heavily on this Court's opinion in *Paredez*, 2004-NMSC-036. *See generally Edwards*, 2007-NMCA-043, ¶¶ 16-32. *Paredez* held that under the first prong of *Strickland* a criminal defense attorney's failure to ascertain and advise a client of the collateral immigration consequences of entering a guilty plea was per se deficient performance. *See Paredez*, 2004-NMSC-036, ¶ 19 ("An attorney's failure to provide the required advice regarding immigration consequences will be ineffective assistance of counsel if the defendant suffers prejudice by the attorney's omission."). *Edwards* analogized the harsh immigration consequences of a criminal conviction to the comparably harsh collateral consequences of SORNA registration. *See* 2007-NMCA-043, ¶¶ 25-27. After considering the two types of collateral consequences in *Edwards*, the Court of Appeals concluded that "[w]e see no reason why the similarly harsh consequences of sex offender registration should not also necessitate specific advice from counsel so that defendants can make informed decisions regarding their pleas." *Id*. ¶ 26.

**{19}** This Court recently issued an opinion that built on our holding in *Paredez* and is persuasive to our analysis regarding *Edwards*' retroactive effect. In *Ramirez II* this Court held that although *Paredez* was issued in 2004, it would be given retroactive effect to cases dating back to 1990 because it did not rely on a novel pronouncement of law. *Ramirez II*, 2014-NMSC-023, ¶ 2. *Ramirez II* recognized that "New Mexico does not give retroactive effect to a new criminal procedure rule." *Id*. ¶ 11. However, the Court determined that *Paredez* did not announce a new rule in 2004 because courts in New Mexico were already prohibited from accepting guilty pleas from defendants who had not been properly advised of the immigration consequences of their pleas under rules that had been in place since 1990. *Ramirez II*, 2014-NMSC-023, ¶ 6. The Court looked specifically to Forms 9-406 NMRA and 9-406A NMRA (1990), which were "used in New Mexico courts in the course of accepting a guilty plea," and Rules 5-303(E)(5) NMRA (1990), 6-502(D)(2) NMRA (1990), 7-502(E)(2) NMRA (1990), and 8-502(D)(2) NMRA (1990), which "predicate[ed] acceptance of a guilty plea . . . on th[e] court's colloquy with the defendant directly, assuring the defendant's understanding of the immigration consequences of the plea." *Ramirez II*, 2014-NMSC-023, ¶¶ 7, 13. Form 9-406 specifically required a court, when accepting a plea, to verify " '[t]hat the defendant understands that a conviction may have an effect upon the defendant's immigration or naturalization status.' " *Ramirez II*, 2014-NMSC-023, ¶ 3 (quoting Form 9-406 (1990)). It also required the defendant to verify that the warning had been administered by the judge and required defense counsel to certify that he or she explained the contents of the forms to the client. *Id*. Additionally, the Court surveyed professional norms, which supported the conclusion that the obligation to advise a client of the immigration consequences of a guilty plea predated *Paredez*, and possibly even the 1990 form and rules. *Ramirez II*, 2014-NMSC-023, ¶ 15.

7

**{20}** The plea rules and forms on which the *Ramirez II* Court relied were silent concerning advisement of SORNA consequences until *Edwards* was decided in 2007. *See* Form 9-406 (2007). Thus, courts at the time of Defendant's conviction were not formally required to ensure that defendants pleading to sex offenses had been advised of SORNA consequences when they entered their pleas. However, since the original 1995 enactment of SORNA, courts have been required to "provide a sex offender adjudicated guilty in that court with written notice of his [or her] duty to register pursuant to [SORNA] . . . *in judgment and sentence forms* provided to the sex offender." NMSA 1978, Section 29-11A-7 (A) (1995) (emphasis added). We conclude that this requirement of notice as part of the judgment and sentence documentation in a criminal case supports the notion that judges and lawyers in criminal cases should have been aware of the requirements and thereby had a duty to incorporate considerations of such requirements into their handling of relevant criminal cases. Indeed, in Defendant's case, the judgment and sentence form used by the district court had a space to denote whether Defendant would be subject to sex offender registration. Regrettably, though, the district court failed to make the correct demarcation, and that mistake went further unchecked by the attorneys in the case.

**{21}** In the instant case the Court of Appeals analogized to this Court's rationale from *Ramirez II* to conclude that *Edwards* applied retroactively because it did not announce a new rule of law. *See Trammell*, 2014-NMCA-107, ¶¶ 11-15. Although the guilty plea forms, Forms 9-406 and 9-406A, that were discussed in *Ramirez II* were not amended to include warnings about SORNA consequences until after *Edwards* was decided by the Court of Appeals—three years after Defendant had entered his plea—the judgment and sentence order issued by the district court in Defendant's case did in fact have an option to check a box relating to sex offender probation. *See Trammell*, 2014-NMCA-107, ¶ 15; *compare* Form 9-406 (1998) *with* Form 9-406 (2007). The Court of Appeals below thus determined that the presence of this item on the judgment and sentence form was evidence that SORNA requirements should have been considered at the time by both the district court and counsel. *See Trammell*, 2014-NMCA-107, ¶¶ 12, 15. Further, *Ramirez II* established that defense counsel has an obligation to be aware of the collateral consequences of a plea, and defense counsel in the instant case testified that it was in fact his usual practice to advise clients about such matters if they were pleading to a sex offense. *Trammell*, 2014-NMCA-107, ¶ 15. And, there was established case law pre-dating *Edwards* which indicated that "there is little question that adequate pre-plea knowledge of the SORNA registration and notification consequences of a plea ought to be a part of criminal procedure." *Trammell*, 2014-NMCA-107, ¶ 15 (internal quotation marks and citation omitted); *see Moore*, 2004-NMCA-035, ¶ 26 ("[W]e think there is little question that adequate pre-plea knowledge of the SORNA registration and notification consequences of a plea ought to be a part of criminal procedure."). Thus, the Court of Appeals concluded that *Edwards* did not announce a new rule and, like *Paredez*, should be applied retroactively. *Trammell*, 2014-NMCA-107, ¶ 15. We agree with the Court of Appeals' retroactivity analysis, and conclude that the case law, professional norms, notice requirements, and forms in use following the enactment of SORNA in 1995 provide ample evidence that advisement of a plea agreement's SORNA registration requirement by defense counsel is, and long has been, a prerequisite to effective

8

assistance of counsel.

**{22}** We favorably compare the instant scenario with those at issue in *Ramirez II* and *Paredez*, and hold that the failure to advise a defendant of collateral SORNA registration requirements, like the failure to advise of immigration consequences, has been a well-established prerequisite to the effective assistance of counsel when arranging a plea agreement. Further, defense counsel testified that it was the professional norm at the time of Defendant's plea to advise clients of SORNA requirements under such a plea agreement. *Cf. Ramirez II*, 2014-NMSC-023, ¶ 15. As such, *Edwards*—like *Paredez*—did not announce a new rule, and should have been applied retroactively by the district court. A defense attorney's failure to advise a defendant entering into a plea which requires SORNA registration of that consequence is per se deficient performance under *Strickland*'s first prong. We thus next turn to the second prong under *Strickland* to determine whether Defendant was prejudiced by his defense counsel's failure to advise him of his plea agreement's SORNA registration requirement.

**ii.     Defendant Failed to Show that He Suffered Prejudice Under *Strickland* as a Result of Defense Counsel's Deficient Performance**

**{23}** Under *Strickland*, in order to show prejudice, "[a] defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. Cases involving plea agreements are different:

> [I]n the plea bargain context a defendant must establish that . . . but for counsel's errors, he would not have pleaded guilty and instead gone to trial. A defendant who was convicted on a plea is not required to prove that a trial would have resulted in acquittal. The question is whether there is a reasonable probability that the defendant would have gone to trial instead of pleading guilty or no contest had counsel not acted unreasonably.

*Patterson*, 2001-NMSC-013, ¶ 18 (internal quotation marks and citations omitted).

**{24}** "There is no formulaic test for determining whether a defendant has demonstrated prejudice. Such a determination is made on a case-by-case basis, in light of the facts of that particular case." *State v. Favela*, 2015-NMSC-005, ¶ 19, 343 P.3d 178. Yet, when assessing whether a defendant has been prejudiced by an attorney's deficient performance, "courts are reluctant to rely solely on the self-serving statements of defendants." *Patterson*, 2001-NMSC-013, ¶ 29. Thus, a defendant must provide additional evidence of prejudice. *Id.* We typically consider the strength of the State's evidence against the defendant and the defendant's pre-conviction statements and actions, such as assertions of innocence or statements of intent to go to trial. *Id.* ¶¶ 30-31.

9

**{25}**     Defendant has only presented evidence that he would have tried to negotiate a different plea agreement had he known about the SORNA requirement. The only evidence Defendant proffers to show that he would have rejected the instant plea agreement in favor of the alternative result of a trial, had his counsel properly advised him of the SORNA requirements, is (1) his testimony that had he been advised that he was pleading to a sex offense, he would not have accepted that plea and would have fought for a different agreement; (2) his plea counsel's testimony that, had he realized that Defendant was pleading to a sex offense, he would have tried to work out a different plea agreement with the prosecutor; and (3) because there was nothing sexual about the factual allegations in Defendant's case, it was likely that the prosecutor would have agreed to a different plea agreement that did not require SORNA registration. Yet, Defendant did not introduce any evidence to support his argument in the form of relevant testimony from the prosecution. And, Defendant did receive some benefits—in the form of numerous dropped charges—by accepting the plea, a salient fact considering his defense counsel's testimony that the State had a "very strong case against" him. Thus, this evidence amounts to no more than the "self-serving" offer of evidence we rejected in *Patterson*. 2001-NMSC-013, ¶ 29. Defendant has not demonstrated in a tangible way that in the absence of the mistake made by his attorney he would have rejected the instant plea agreement in favor of taking his arguments to trial. That is, the evidence falls short of demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," particularly where "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome," that outcome being the decision not to go to trial. *See Strickland*, 466 U.S. at 694.

**{26}**     Further, Defendant was made aware of his plea's SORNA registration requirement over two years prior to this eventual challenge, bolstering our conclusion that his claim that he would not have accepted his plea is self-serving. First, instead of immediately soliciting the advice of a lawyer following his apprisal of the SORNA registration requirement six months prior to his release, Defendant merely acquiesced. *Trammell*, 2014-NMCA-107, ¶ 3. And, upon his release, Defendant likewise made no effort to investigate the SORNA registration requirement, either personally or with the help of a lawyer, instead choosing to dutifully register without voicing complaint. And, although Defendant suggests that he was "in the process of" getting a lawyer to help him investigate the SORNA registration requirement, that effort was ongoing for over two years. The fact that Defendant was only motivated to challenge his plea upon violating that plea two years after registering under SORNA is strong evidence that he in fact suffered no prejudice.

**{27}**     Defendant requests that we consider his argument by framing the issue more broadly, in that under *Strickland* "a defendant [need only] show that there is a reasonable probability that but for counsel's ineffectiveness, the result of the *proceeding* would have been different." *See id.* at 693-94. Essentially, because a plea without a sex offense may have been possible because plea counsel testified that had he known Defendant was pleading to a sex offense he would have renegotiated a different plea agreement, Defendant asks us to find prejudice in the same way as the Court of Appeals. And, we have, on occasion, considered

10

whether a defendant could show sufficient prejudice by evidence demonstrating that he or she would not have entered *this plea agreement*, had defense counsel performed adequately, because with effective representation, a *different plea agreement* might have been reached. *See Garcia v. State*, 2010-NMSC-023, ¶ 47, 148 N.M. 414, 237 P.3d 716 (suggesting that the defendant may have been prejudiced by his attorney's misunderstanding of the law and the facts of the case, insofar as it made defense counsel unable to "competently negotiate a plea agreement" to a lower, potentially more appropriate, sentence). Yet, in *Garcia*, the evidence suggested that "defense counsel . . . advise[d] [the d]efendant to agree to a plea agreement that resulted in a minimum of 30 years in prison—notwithstanding the fact that even if [the d]efendant had been convicted . . . he would have received only 24 years," if that conviction was for the State's charge of negligent, as opposed to intentional, child abuse—the issue being that defense counsel had advised the defendant that the sentence for either would be thirty years regardless. *Id.* In this case Defendant urges us to rely on speculation by his plea counsel that a different result in the proceedings would have been reached had the SORNA requirements of his plea not been overlooked. We cannot take such a leap without a more robust offer of evidence—beyond the self-serving testimony of Defendant and the speculation of his plea counsel. Thus, we conclude that Defendant has provided insufficient evidence that he would have rejected the instant plea agreement in favor of a trial on the merits, or some other result of the proceeding. Despite holding that Defendant's counsel acted deficiently in failing to advise Defendant of his plea agreement's SORNA registration requirements, we further hold that he failed to present sufficient evidence that he was thereby prejudiced by said deficiency. Defendant's claim of ineffective assistance of counsel therefore fails.

## IV. CONCLUSION

{28} Defendant was not prejudiced by his plea counsel's per se deficient performance in failing to advise him of his plea agreement's collateral SORNA registration requirement. We therefore reverse the Court of Appeals and remand to the district court for entry of an order denying Defendant's motion to withdraw his plea agreement in accordance with this opinion.

{29} **IT IS SO ORDERED.**

                                         _____

                                         **BARBARA J. VIGIL, Justice**

**WE CONCUR:**

_____

**CHARLES W. DANIELS, Chief Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**


_____
**JUDITH K. NAKAMURA, Justice**